ALBERT NAERIS, Individually and as Guardian ad Litem of ALAR NAERIS, an Infant, Appellant, *v.* NEW YORK TELEPHONE COMPANY, Respondent.

First Department, July 1, 1958.

*Arnold B. Elkind* of counsel (*George Brody,* attorney), for appellant.

*Robert Luce Donohue* of counsel (*Jordan R. Bassett* with him on the brief; *G. Wallace Bates,* attorney), for respondent.

McNALLY, J.   The principal issues on this appeal are whether the evidence presented raised jury questions as to proximate

cause and reasonable foreseeability in respect of the defendant-appellant's act of double parking and the accident. The learned trial court, in dismissing the complaint at the close of the proof, assumed the defendant's truck was double parked, that the act of the defendant was negligent, but concluded, as a matter of law, that the negligence was not the proximate cause of the occurrence. A proper consideration of the issues requires a detailed narrative of the circumstances.

On Sunday, June 27, 1954, the infant plaintiff, then eight years of age, was playing cops and robbers when he was struck by a car on Valentine Avenue, approximately 100 feet north of the intersection of 184th Street and Valentine Avenue in the county of Bronx, and directly in front of a building owned and operated by the defendant New York Telephone Company. Valentine Avenue, at the place where the child was struck, is 32 feet wide from curb to curb; one vehicle was parked along the easterly curb and another vehicle was parked along the westerly curb of the road. The truck of the defendant was standing adjacent to and west of the vehicle parked near the easterly curb of Valentine Avenue. Thus, within the roadway of 32 feet, at the site of the accident, parked parallel, were three vehicles, two near the easterly curb and one near the westerly curb.

Prior to the occurrence the infant plaintiff ran across Valentine Avenue from the west curb to the east curb. Upon arriving at the east curb, he was directly in front of defendant's building; he then turned to retrace his steps across Valentine Avenue in a westerly direction and was struck down but one foot west of the defendant's truck by an automobile proceeding northerly.

The operator of the northbound vehicle testified that prior to the accident he had stopped for a red light on 184th Street and then made a right turn into Valentine Avenue, traveling north toward the scene of the accident. He thereupon observed the double-parked truck. His testimony was as follows: " The Court: Keep your voice up. Q. Yes, keep your voice up. Now, Mr. Lynch, will you please tell the jury and the Judge what happened from the time you made that right turn into Valentine Avenue up to the time the car came in contact with the child? A. At 184th Street I was stopped for a light and when the light changed I made a right at Valentine Avenue. As I drove about ten feet, there was a truck — I went around it and the next thing I noticed the young child ran into the car. * * * Q. When you passed this vehicle which you say was double parked, on what side of the white line were you driv-

ing? A. Partially I was on the other side of the white line because — to get by the truck. Q. Was there any traffic coming south on Valentine Avenue at that time? A. No. Q. You had plenty of room to pass this double parked vehicle? A. Yes.''

The right front headlight of the northbound vehicle came in contact with the infant plaintiff. The operator of the northbound vehicle did not see the child prior to the accident, and the infant plaintiff testified that he did not see the moving vehicle before the accident. The child's testimony on that point was as follows: '' Q. At any time, Alar, before this car that you testified to struck you, did you see that car? A. The car that hit me? Q. Yes. A. No.''

The operator of the northbound vehicle testified on cross-examination that he was proceeding at a speed of 5 to 10 miles an hour because children always played around the defendant's building. The mother of the infant also testified that children habitually played in front of the defendant's building.

Section 10 of article 2 of the Traffic Regulations of the Police Department of the City of New York provides: '' No person shall park a vehicle: * * * (O) On the roadway side of any vehicle stopped or parked at the edge or curb of a street. (Double parking.)''

In the light of the physical and traffic conditions and the known propensity of children to play at or near the defendant's building, whether or not the defendant's parked truck served to obstruct the view of the infant plaintiff as well as the view of the operator of the northbound vehicle and thus present a hazard within the range of reasonable apprehension was a question of fact. (*Lugert* v. *Cohen*, 303 N. Y. 642.)

The evidence does not establish the height, width, shape and construction of the parked vehicles, including the defendant's, adjacent to the easterly curb of Valentine Avenue. We note, however, that the defendant's brief concedes that the view of the operator of the northbound vehicle was obscured. This concession supports the inference that when the infant plaintiff stepped off the easterly curb of Valentine Avenue his view of the northbound vehicle also was obscured by the two parallel parked cars in front of him. We cannot, as a matter of law, on this record, state that this infant was not within the zone of danger apprehended by the regulation against double parking. (*Carlock* v. *Westchester Light. Co.*, 268 N. Y. 345, 349; cf. *Kernan* v. *American Dredging Co.*, 355 U. S. 426.) Violation of a traffic regulation is some evidence of negligence. (*Holder* v. *Abramson*, 271 App. Div. 649.)

It was within the competence of the jury to find that the defendant's violation of the traffic regulation proximately caused the occurrence and injuries to the infant plaintiff. The concurrent, although perhaps negligent, intervention of the northbound vehicle does not preclude a finding that the defendant's said negligence proximately caused the accident. (*Carlock* v. *Westchester Light. Co., supra,* p. 350.) "'Negligence is gauged by the ability to anticipate.' (*McGlone* v. *Angus, Inc.,* 248 N. Y. 197, 199.) 'The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension * * *. The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury.' (*Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339, 344, 345.) Defendant need not have notice of the particular manner in which an accident would occur if it was reasonably foreseeable by an ordinarily prudent person. (*Munsey* v. *Webb,* 231 U. S. 150, 156.)" (*Abbott* v. *New York Public Lib.,* 263 App. Div. 314, 318.)

Foreseeability on the facts here present was a question of fact. (*O'Neill* v. *City of Port Jervis,* 253 N. Y. 423, 434–435; *Lopez* v. *City of New York,* 4 A D 2d 48, 51–52, affd. 4 N Y 2d 738.) The issue of contributory negligence, in the light of the tender age of the infant plaintiff, was also one of fact. (*Sheffield* v. *Yager,* 256 App. Div. 748.)

The evidence in this case is slender and leaves much in doubt, and it may well have been that on this record a verdict in favor of the plaintiff would be against the weight of the evidence. We merely hold that on the proof the complaint could not be dismissed but that sufficient had been presented to require submission to the jury.

The judgment for the defendant should be reversed on the law and the facts and a new trial ordered, with costs to abide the event.

STEVENS, J. (dissenting). The simple question here is whether the double parking of defendant's truck—although in violation of traffic regulations—was the proximate cause of the accident. From the nature of the occurrence it is apparent that the mere fact of being double-parked did not contribute to the accident any more than if defendant's vehicle were parked against the curb. The regulations against double parking were not designed to avoid the type of accident which we are considering. Rather such regulations were calculated to ensure a free flow of traffic in the streets. The deficiency in plaintiff's case lies in the failure to establish any causal nexus

between the accident and the double parking. That is, there was no evidence warranting submission of the case. "When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none which ought reasonably to satisfy a jury that the fact sought to be proved is established." (*Jewell* v. *Parr*, 13 C. B. 909, 916, per MAULE, J., cited with approval and adopted in *Pollock* v. *Pollock*, 71 N. Y. 137, 153; *Matter of Case*, 214 N. Y. 199, 203.) The test is whether the trial court could conclude that by no rational process could the trier of facts base a finding in favor of the party moved against upon the evidence presented. (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241; *Wearever Upholstery & Furniture Corp.* v. *Home Ins. Co.*, 286 App. Div. 93.) Hence the complaint was properly dismissed. We therefore dissent.

BOTEIN, P. J., and BREITEL, J., concur with McNALLY, J.; STEVENS, J., dissents in opinion, in which VALENTE, J., concurs.

Judgment reversed upon the law and upon the facts, and a new trial ordered, with costs to abide the event.