Jasen, J.
This is an action to recover for the death of plaintiff’s testator alleged to have been caused through the negligence of the defendant. For a number of years, the decedent regularly used the Long Island Rail Road in commuting between his Williston Park home and his place of employment in New York City.
On July 20, 1966, the decedent called his wife to inform her that he had “ missed his East Williston train ” and was instead taking a train to the Mineola station. He also advised her that he would arrive at the Mineola station at about 6:15 p.m., and asked her to meet him there with the family ear. Thereafter, he boarded Train No. 554 in Jamaica, an express train to Albertson. Although the train was not scheduled to stop at Mineóla, it was customary for the train to travel slowly in the vicinity of the Mineóla station, pending clearance to proceed through the crossover switch and onto the Oyster Bay Line. *42 The decedent was fatally injured while disembarking from the train in the Mineola station. There is. a conflict of evidence as to whether the train had stopped or was moving at the time of the accident, and also, whether the decedent was fatally injured as a result of his riding on the platform (vestibule) of the car in violation of section 83 of the Railroad Law.
A reversal and new trial is required here solely upon the ground that the trial court’s instructions to the jury, with regard to the applicability of section 83 of the Railroad Law and the issue of contributory negligence, were erroneous.
Section 83 of the Railroad Law provides in pertinent part: “ No railroad corporation shall be liable for any injury to any passenger while on the platform [vestibule] of a car * * * in violation of the printed regulations of the corporation, posted up at the time in a conspicuous place inside of the passenger cars, then in the train, if there shall be at the time sufficient room for the proper accommodation of the passenger inside such passenger cars ”.
Undisputed testimony indicated that on this train signs appeared in the front and rear vestibules of each car and inside each car, stating: ‘ ‘ Please keep off the platform until the train stops ”. Also, it is undisputed that there were empty seats in the car from which the decedent exited. Thus, there was testimony that both prerequisites of section 83 were satisfied.
In a written request, defendant asked the court to instruct the jury that if the decedent went upon the car platform while the car was in motion, in violation of section 83 of the Railroad Law, and such act on the part of the decedent was the proximate cause of his injuries, the plaintiff could not recover. Instead, the court instructed the jury that section 83 does not apply “to a passenger preparing to leave the train at a station who enters upon the platform as the train enters the station.”
There can be little dispute that the statute clearly relieves the railroad of liability if the passenger .rides on the platform in violation of the posted regulations of the railroad. Plaintiff, however, argues that the statute was not intended to cover the disembarking passenger, for were it so construed, the passenger would be required to remain in his seat until the train stopped and would have insufficient time in which to exit before the train restarted.
*43 We cannot agree. The statute does not mandate that the passenger remain in his seat until the train has halted; rather, it only prohibits one from entering the platform of a moving train. A passenger may, without violating the statute, leave Ms seat and walk down the aisle of the car to the door to the platform, and when the train stops fully, enter the platform and alight from the train.
The regulation discouraging riding on the platform makes a great deal of sense as the tragedy in this case indicates. If, as plaintiff argues, it is not possible for the passenger to both observe the regulation and still make a timely exit from the train, the passengers should demand the railroad lengthen the duration of the stops. However, this should not be reason for the individual passenger to take his life in his hands and refuse to recognize this salutary prohibition of the statute intended for Ms own safety.
In Kettell v. Erie R. R. Co. (225 N. Y. 727), we were faced with a New Jersey statute which provided that “ [i]n case any passenger on any railroad shall be injured by reason of his going * * * on the platform of a car * * * in violation of the printed regulations of the company posted up in a conspicuous place * * * such company shall not be liable for the injury ”. The defendant railroad had posted sufficient signs. As the train moved into the station, the plaintiff got up from his seat, walked to the platform and stood in the open door of the moving car. There was a sudden lurch and the plaintiff was thrown out the door of the car and was injured. We affirmed a directed verdict for the defendant without opinion; however, as the opinion in the Appellate Division noted, "If the statute means anything it permits this notice and exempts defendant from liability for accidents from its violation. If the prohibition in the notice means anything it prohibits the very act of the plaintiff which resulted in his injury. ” (176 App. Div. 430, 435-436.)
In addition to incorrectly instructing the jury with regard to the applicability of section 83 of the Railroad Law, the trial court improperly charged the jury as to the standard of contributory negligence.
In its written requests to charge, the defendant asked the court to charge that if the jury found decedent stepped or *44 jumped off a moving train, then the jury must find for the defendant. Instead, the court instructed the jury: “While a railroad is under a duty to allow its passengers a reasonable time in which to board or alight from a train, a passenger is guilty of contributory negligence, as a matter of law, if he attempts to get off a train that is moving at other them an exceedingly slow rate of speed, for example, not more than two or three miles per hour.” (Emphasis added.)
The well-established rule of law in this State is that boarding or alighting from a moving train is negligence per se unless in so doing either the passenger was put to an election between alternative dangers, or some direction of a railroad employee to get on or off the train had diverted the passenger’s attention from the danger and had created a confidence that the attempt could be made in safety. (Mearns v. Central R. R. Co. of N. J., 163 N. Y. 108; Soloman v. Manhattan Ry. Co., 103 N. Y. 437.) Clearly, in light of these decisions, the trial court’s instruction in regard to contributory negligence was in error.
Although the instructions to the jury were erroneous, a question is raised as to whether each of these issues has been preserved for our review.
As mentioned, the defendant submitted proper written requests to charge with regard to the applicability of section 83 of the Railroad Law and the issue of contributory negligence. The trial court did not so charge. Immediately after the instruction to the jury, the following colloquy took place in open court:
“ [The Court]: If there are any exceptions or requests to charge I will hear them in chambers. Are there any? Are there some?
“ Mr. Donnelly [Defendant’s attorney] : I have no exceptions, your Honor.
‘‘The Court: Do you have any exceptions ?
“ Mr. Donnelly: I have no exceptions.
“ Mr. Halpern: No, your Honor.
‘ ‘ The Court: Do you have requests to charge ?
“ Mr. Donnelly: Judge, it is not a request—
"The Court: If you have, I will hear it in chambers.
“ Mr. Donnelly: It isn’t a request, your Honor—
“ Mr. Halpern: May we step inside, sir?
*45 “ Mr. Donnelly: It isn’t a request.
‘ ‘ The Court: All right.
“ Mr. Halpern: I have no requests, Judge.
‘‘Mr. Donnelly: Can we come up to the bench, Judge? It isn’t a request, actually.”
There followed a discussion off the record at the bench and then the jury was sent to begin their deliberations. Immediately thereafter, a conference was held in the Judge’s chambers and defense counsel requested the Judge to charge the jury in a manner similar to the written requests earlier submitted. The court declined to so charge and noted: “Let the record show that defendant’s attorney requested the following charges to the jury be made by the Court and that any of the requests to charge as hereinafter indicated that were not included in the Court’s charge may be considered as having been declined by the Court to so charge.”
CPLR 4017 provides: ‘ ‘ Formal exceptions to rulings of the court are unnecessary. At the time a ruling or order of the court is requested or made a party shall make known the action which he requests the court to take or, if he has not already indicated it, his objection to the action of the court. At any time before the jury retires to consider its verdict, a party shall make known his objection to a charge to the jury or a failure or refusal to charge as requested. Failure to so make known objections may restrict review upon appeal in accordance with paragraphs three and four of subdivision (a) of section 5501.” This represents a change from former practice which merely required that objection to the charge be made before the jury rendered their verdict. (Civ. Prac. Act, § 446.) As Messrs. Weinstein, Korn and Miller point out, this change “ will avoid unnecessary recalling and recharging of the jury, which can only have a deleterious effect on the deliberative process.” (4 N. Y. Civ. Prac., par. 4017.07, p. 40-82.)
While the defendant herein did not object to the failure to charge as requested until after the jury had retired, we are of the opinion that the issue of the charge was adequately preserved for our review.
The trial court had indicated to counsel that it did not desire to have the exceptions and requests to charge heard before the jury, and instructed counsel that such be brought up in chambers. *46 Counsel was entitled to rely upon this instruction of the court in withholding his exception until the conference in chambers. Moreover, the objection was raised in chambers immediately following submission of the case to the jury. Had the court accepted counsel’s requests, the deleterious effect on the jury’s deliberative process in recalling the jury and recharging them would have been de minimis. Furthermore, the response of the court in chambers to counsel’s requests clearly indicates that the court had considered the earlier written requests and had made an irrevocable decision not to charge in accordance with those requests. In such a situation, it would exalt useless formalism over substance to hold that the issue of the charge had not adequately been preserved for review.
Accordingly, the order of the Appellate Division is reversed and the action remitted to the Supreme Court for a new trial.