## (February 6, 1984)

■ ROSE BENDER et al., Appellants, v NASSAU HOSPITAL et al., Defendants, and EDWARD SABATELLE, Respondent. — In a medical malpractice action,

plaintiffs appeal from a judgment of the Supreme Court, Nassau County (Roncallo, J.), entered January 22, 1982, which, upon a jury verdict, was in favor of defendant Edward Sabatelle. Judgment reversed, on the law, with costs to abide the event, and new trial granted as against Edward Sabatelle. On January 19, 1975, plaintiff Rose Bender injured her right arm when she fell down the basement stairs in her home. She was taken by ambulance to the emergency room of Nassau Hospital where she was examined by a resident orthopedist who diagnosed her injury as a fracture of the right humerus (shoulder). After consulting by telephone with defendant Dr. Edward Sabatelle, the attending orthopedic surgeon, the resident applied a long-arm hanging cast. Although X rays had been taken of Mrs. Bender's right shoulder, none were taken of her right elbow. Thereafter, Mrs. Bender was treated for the fracture over a period of months by Dr. Sabatelle. During the initial months of treatment, Dr. Sabatelle relied upon the diagnosis of the emergency room resident and treated Mrs. Bender solely for a fracture of the humerus. Despite Mrs. Bender's complaints of pain in her elbow, no X rays were taken of that area. On April 7, 1975, however, when after some three months of treatment, Mrs. Bender's complaints persisted, Dr. Sabatelle took an X ray of her elbow which revealed a displaced fracture of the olecranon process. Plaintiffs then commenced this action alleging malpractice on the part of Nassau Hospital, Dr. Sabatelle and the physicians who attended Mrs. Bender in the emergency room. During the course of the trial, plaintiffs settled the case with all defendants except Dr. Sabatelle. As to him, plaintiffs, through their expert, contended, *inter alia,* that he had departed from good and accepted medical practice in failing to come to the emergency room on the night of the accident to review the X rays and personally examine Mrs. Bender, in failing to surgically reduce the fracture of her shoulder before placing it in a cast, in failing to X ray her elbow until some three months after the accident, in failing to bivalve or cut a window in her cast to investigate the cause of her complaints of pain in her elbow, and in failing, upon discovery of the fracture in the elbow, to reduce the fracture and pin the bone fragments. It was asserted that as a result of the negligent failure to reduce the fracture of her shoulder, Mrs. Bender was caused unnecessary pain and suffering during the time she was in the cast, and had a greater loss of mobility. Further, it was claimed that as a result of the failure to promptly discover the fracture of her elbow and the subsequent negligent treatment thereof, she was caused unnecessary pain and suffering, she lost mobility in her elbow and she developed traumatic ulnar neurities with a consequent loss of motor power and sensation in a portion of her arm and hand. Dr. Sabatelle, for his part, asserted that the pain in Mrs. Bender's elbow during the period prior to the discovery of the fracture represented consistent residual effects of the fracture in the shoulder and the immobilization of the elbow in a cast and sling for an extended period, and that, therefore, he had no cause to suspect any damage to the elbow. He also claimed that Mrs. Bender exhibited no evidence of any ulnar nerve injury during the period in which he was treating her, and that given the position of the displaced fracture of the elbow, there was no evidence of the bone fragment impinging upon the ulnar nerve. This view was shared by his expert witness. Also, in Dr. Sabatelle's opinion, the delay in discovering the fracture had no effect upon Mrs. Bender's recovery of mobility in her elbow. Further, he expressed his view that, contrary to the position of plaintiffs' expert, the preferred course of treatment for Mrs. Bender's injury would have been to surgically remove the bone fragment rather than pin it. This option, he claimed, had been presented to Mrs. Bender and was specifically rejected. He also testified that during the time she was under his care Mrs. Bender

regained almost all of the normal range of function of both her shoulder and her elbow, and to his knowledge recovered even greater mobility in the ensuing period. At the conclusion of the evidence, plaintiffs requested the court to charge, *inter alia,* that in order for them to recover, the jury must find that Dr. Sabatelle's negligence "was a proximate cause of the complications" and that if they found that he "was negligent in the care and treatment of the plaintiff and that negligence caused or contributed to the complications" then they might find him liable. The court denied the request and instead charged the jury as follows: "If a patient should sustain an injury while undergoing medical care and that injury results from a doctor's lack of knowledge or ability or from his failure to exercise reasonable care or to use his best judgment, then he is responsible for the injuries that are the result of his acts. Now, if you believe from the evidence that the claimed injury of which the plaintiff complains was caused by or from a cause over which the defendant, Dr. Sabetelle [*sic*], had no control, that is, by the happening of the accident in the plaintiff's home or through the actions of Nassau Hospital and their employees * * * then you must find in favor of Dr. Sabetelle [*sic*] because in order to recover in this case, the plaintiffs must prove that Dr. Sabetelle [*sic*] in performing his medical services did not use his best judgment in the use of reasonable care in the exercise of his knowledge and ability in treating the plaintiff's condition, as I have already instructed you." The court also submitted several special questions to the jury, including: "[W]as Dr. Edward Sabetelle [*sic*] guilty of negligence which was a proximate cause of the occurrence?" During the second day of deliberations the court, in response to a question submitted by the jury, reread its charge on malpractice and negligence, including that portion quoted above. Less than one hour later, the jury again requested a reading of the charge on negligence. On this occasion, instead of rereading its entire charge on negligence, the court simply reread a short paragraph in which the term "negligence" was generally defined. Approximately two hours later, in response to yet another request, the court reread the entire charge on malpractice and negligence, at the conclusion of which the jury was dismissed for the evening. The following morning, at the jury's request, the court once again reread its entire charge. At that point, juror number four asked, "If it occurred at home — if we find it occurred at home, does it mean we've got to come in in favor for [*sic*] the defendant?" The court, rather than responding directly to the inquiry, once more reread that portion of the charge explaining malpractice and negligence. At the conclusion of the court's rereading of the charge, plaintiffs' counsel objected and requested a mistrial on the ground that the jury was confused. The court denied the motion for a mistrial, and counsel excepted to the denial and renewed his objection to the charge. By a split vote the jury returned a verdict for Sabatelle. Under the circumstances of this case, we deem a new trial to be necessary. It is apparent from the jury's repeated requests that the charge be reread that they were having difficulty understanding the law to be applied to the facts of the case. It must be noted that this was a complicated, lengthy trial which extended over 10 days and presented numerous factual issues for the jury's determination. While neither party requested that the court marshal the evidence, such instructions on the court's own initiative may have been beneficial in this case (cf. *Blaize v City of New York,* 80 AD2d 594). Nonetheless, regardless of whether the court was requested to marshal the evidence, it had an obligation to instruct the jury not only as to the law but also as to the application of the factual contentions of the parties to the legal principles charged. General or abstract principles of law, no matter how correct, are of little use to a jury unless they are related to the specific contentions of the parties (*Green v Downs,* 27 NY2d 205). Thus, when, after having reread its charge on negli-

gence and malpractice several times, the court was presented with a question as to whether Sabatelle should be absolved from liability if "it" occurred at home, the court was under an obligation to do more than simply reread that charge yet another time. It should have been manifest at that point that at least one juror was confused as to a fundamental theory of the plaintiffs' case, i.e., that the injuries Mrs. Bender suffered at home were aggravated by Sabatelle in treating and/or failing to discover those injuries. At that point the court had an obligation to do more than merely repeat abstract principles of law. It was required to apply those principles to the factual contentions of the case. "When, as in this case, the jury pinpoints their lack of understanding they are entitled to something more than that which led to their original confusion" (*Schwabach v Beth Israel Med. Center,* 72 AD2d 308, 312). While objections to a jury charge are ordinarily required to be made before the jury retires to consider its verdict (CPLR 4017, 4110-b), where, as here, a juror raises a question during deliberations which evidences a lack of understanding of the law, counsel may properly object to the court's response or lack of response thereto. Thus, the issue of the charge was adequately preserved for our review by counsel's objection to the court's response (see *Meagher v Long Is. R. R. Co.,* 27 NY2d 39, 45; see, also, CPLR 4017; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4017.07). Bracken, J. P., Brown, Niehoff and Boyers, JJ., concur.