■ MARY SULLIVAN, as Administratrix of the Estate of PATRICK SULLIVAN, Deceased, et al., Respondents, v JOSEPH LOCASTRO et al., Appellants.—In an action to recover damages for personal injuries and wrongful death, etc., the defendants appeal from a judgment of the Supreme Court, Queens County (Durante, J.), entered August 2, 1989, which, upon a jury verdict, (1) is in favor of the plaintiff Mary Sullivan, as Administratrix of the Estate of Patrick Sullivan, and against the defendants in the principal sum of $3,058,000 ($8,000 for wrongful death, $2,500,000 for conscious pain and suffering, and $550,000 for loss of earnings), (2) is in favor of the plaintiff James P. Sullivan and against the defendants in the principal sum of $634,000 ($20,000 for medical expenses, $174,000 for hospital expenses, $200,000 for nursing expenses, and $240,000 for therapy expenses), and (3) directed the defendants New York City Transit Authority and Metropolitan Transportation Authority to pay interest of 9% per year on the awards to the plaintiff from April 7, 1989, the date of the verdict.

Ordered that the judgment is modified, on the law and the facts and as a matter of discretion, (1) by deleting the first decretal paragraph thereof in favor of the plaintiff Mary Sullivan, as Administratrix of the Estate of Patrick Sullivan, in the principal sum of $8,000 for wrongful death, (2) by deleting the second decretal paragraph thereof in favor of the plaintiff Mary Sullivan, as Administratrix of the Estate of Patrick Sullivan, in the principal sum of $3,050,000, unless the plaintiff Mary Sullivan, as Administratrix of the Estate of Patrick Sullivan, serves and files in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to decrease the award for damages for conscious pain and suffering from the principal sum of $2,500,000 to the principal sum of $1,500,000 and to the entry of an amended judgment in her favor in the principal sum of $1,500,000, for conscious pain and suffering, and (3) deleting the provisions thereof awarding interest of 9% per year from April 7, 1989, payable by the defendants Metropolitan Transportation Authority and New York City Transit Authority, and substitut-

ing therefor provisions awarding interest of 3% per year from April 7, 1989, payable by the defendants Metropolitan Transportation Authority and New York City Transit Authority; as so modified, the judgment is affirmed, with one bill of costs to the plaintiffs; and it is further,

Ordered that plaintiff Mary Sullivan's time to serve and file a stipulation is extended until 20 days after service upon her of a copy of this decision and order, with notice of entry; and it is further,

Ordered that in the event that Mary Sullivan so stipulates, then the matter is remitted to the Supreme Court, Queens County, for (1) a new trial with respect to the claims for damages for wrongful death and loss of earnings, and (2) the entry of an appropriate amended judgment in favor of the plaintiff Mary Sullivan in the principal sum of $1,500,000 for conscious pain and suffering, and in favor of the plaintiff James P. Sullivan, with the interest assessed against the New York City Transit Authority and the Metropolitan Transportation Authority limited to 3% per annum; and it is further,

Ordered that in the event that Mary Sullivan fails to so stipulate, then the matter is remitted to the Supreme Court, Queens County, for (1) a new trial with respect to the claims for damages for wrongful death, conscious pain and suffering, and loss of earnings, and (2) the entry of an appropriate amended judgment in favor of the plaintiff James P. Sullivan, with the interest assessed against the New York City Transit Authority and the Metropolitan Transportation Authority limited to 3% per annum.

At about 8:00 A.M. on October 8, 1982, 14-year-old Patrick Sullivan and his schoolmate, Vincent Corrado, stepped off the curb on the east side of Francis Lewis Boulevard, 29 feet from its intersection with 33rd Avenue in Queens, intending to cross to the southwest side of the intersection in order to take a bus to school. An empty New York City bus was parked on the east side of Francis Lewis Boulevard, south of where the boys were standing, 30 to 40 feet from the corner next to a fire hydrant, in a zone where no parking is permitted between 7:00 A.M. and 9:00 A.M. From the sidewalk, the bus blocked the boys' view to their left of northbound traffic on Francis Lewis Boulevard. The two boys therefore walked out nine to 10 feet into the roadway's parking lane and stopped. Vincent Corrado, on Patrick Sullivan's left, peered around the bus in the direction of northbound traffic. At that moment, the defendant Ronald Marino, driving a 1977 Cadillac owned by his cousin

Joseph Locastro, switched from the left into the right moving lane of traffic, and swerved into the area where the two boys were standing. Vincent Corrado jumped backward, out of the way, but Patrick Sullivan was struck by the car and propelled 71 feet.

As a result of the collision, Patrick Sullivan sustained serious brain damage and was left a spastic quadriplegic, suffering from aphasia and seizures. The evidence established that the boy was in constant extreme pain because of the permanent contraction of his muscles. After three years and nine months of hospitalizations and therapy, on July 27, 1986, he died following a grand mal seizure.

The jury found the defendant Marino 36% at fault in the happening of the accident and the defendant New York City Transit Authority 64% at fault in the happening of the accident. It also awarded the following damages: $8,000 for wrongful death, $2,500,000 for conscious pain and suffering, $550,000 for loss of earnings, $20,000 for medical expenses, $174,000 for hospital expenses, $200,000 for nursing expenses and $240,000 for therapy expenses.

On appeal, the New York City Transit Authority and the Metropolitan Transportation Authority contend that the plaintiffs failed to make out a prima facie case against them, because none of the traffic rules and regulations violated by the illegally parked bus were enacted to protect the class of persons to which the plaintiffs' decedent belonged. This contention is without merit. We note that the bus was parked next to a fire hydrant, in an area where there was no parking between 7:00 A.M. and 9:00 A.M., and that it was not at a designated bus stop, but rather was positioned near an intersection. It was error for the court to charge that the jury could consider the bus's parking near the fire hydrant as evidence of negligence—because that regulation does not contemplate traffic and/or pedestrian safety. However, the other regulations did to some degree contemplate traffic and/or pedestrian safety. Owners of illegally parked vehicles who create an unreasonable risk of harm to others must respond in damages to a party whose injury is proximately caused by the illegal conduct. Where "but for" a defendant's improper parking of his vehicle, an accident involving a moving vehicle would not have happened, the question of whether the defendant's breach of the parking violation was a proximate cause of a reasonably foreseeable accident is a question of fact for the jury (e.g., *Ferrer v Harris,* 55 NY2d 285, *remittitur amended on other grounds* 56 NY2d 737; *Somersall v New*

*York Tel. Co.,* 52 NY2d 157; *Gonzalez v City of New York,* 148 AD2d 668; *O'Connor v Pecoraro,* 141 AD2d 443; *Dowling v Consolidated Carriers Corp.,* 103 AD2d 675, *affd* 65 NY2d 799; *Naeris v New York Tel. Co.,* 6 AD2d 196, *affd* 5 NY2d 1009).

The trial court's charge properly permitted the jury to consider as some evidence of negligence, that the bus was parked in an area where there was no parking between 7:00 A.M. and 9:00 A.M., and that it was not at a designated bus stop, but rather was positioned near an intersection. The various prohibitions against parking where the bus was parked did not impose a higher standard of care than the common law standard, but essentially merged with the common law standard—i.e., " 'ordinary care commensurate with the existing circumstances' " *(Crosland v New York City Tr. Auth.,* 68 NY2d 165, 168, quoting from *Thomas v Central Greyhound Lines,* 6 AD2d 649, 652; *Dance v Town of Southampton,* 95 AD2d 442). The isolated error of instructing the jury that it could consider the bus's parking near the fire hydrant as some evidence of negligence was harmless since the liability of the New York City Transit Authority and the Metropolitan Transportation Authority was otherwise established beyond peradventure *(see, Fischl v Carbone,* 155 AD2d 516; *Moore v Maggio,* 96 AD2d 738).

Notwithstanding the assertion of the defendants Marino and Locastro to the contrary, the jury's finding that the plaintiffs' decedent was not contributorily responsible for the happening of the accident is amply supported by the record. The credible evidence suggests that Patrick Sullivan was crossing the boulevard at the safest point in this unusual intersection, and that at the time he was struck he was standing inside the parking lane, out of the way of moving traffic. As such, he was not under any absolute obligation to look to the left and right, and his failure to do so did not constitute negligence as a matter of law *(see, Knapp v Barrett,* 216 NY 226; *Pecora v Marique,* 273 App Div 705). The jury could reasonably find that Patrick Sullivan had "yielded" to passing automobiles by stopping within the parking lane, and that he had the right to count on motorists obeying the law and remaining within the moving lanes of traffic *(Pecora v Marique, supra).* In addition, although he had passed the point where the bus completely blocked his view, he paused at a point where his friend Corrado, standing to his left, impeded his view of the Marino vehicle *(see, Kaplan v Posner,* 192 App Div 59; *Baker v Close,* 137 App Div 529, *affd* 204 NY 92).

The trial court did not improvidently exercise its discretion

in permitting the plaintiffs' accident reconstruction expert to testify regarding the unusual configuration and traffic patterns of the intersection at bar, in order to help the jury understand whether or not Patrick Sullivan was contributorily negligent in attempting to cross the street where he did *(see, People v Cronin,* 60 NY2d 430, 433; *De Long v County of Erie,* 60 NY2d 296, 307). We note that all of the witnesses at trial, including the defendants' own expert, agreed that it was safest to cross the Boulevard several feet south of the intersection with 33rd Avenue, in order to reach a mid-traffic island whose tip was set back from the corner.

We note that any error attending the admission into evidence of an hour-long videotape of the plaintiffs' decedent being tended to by his parents and various therapists was harmless *(cf., People v Fondal,* 154 AD2d 476).

Further, there is no merit to the defendants' contention that the testimony of the plaintiffs' economist was in any respect improper. It is well settled that loss of future earnings is a legitimate item of damages, even for an infant plaintiff *(see, Ledogar v Giordano,* 122 AD2d 834, 837), and even where the computation of such damages " 'is necessarily speculative and fraught with difficulties' " *(Kavanaugh v Nussbaum,* 129 AD2d 559, 563, *mod on other grounds* 71 NY2d 535). However, because the jury appears to have confused "lost earnings" with "wrongful death," a new trial must be granted with respect to these two items of damages *(see, Booth v Penney Co.,* 169 AD2d 663; *McStocker v Kolment,* 160 AD2d 980; *Scaduto v Suarez,* 150 AD2d 545; *Moore v Bohlsen Assocs.,* 141 AD2d 468; *Wingate v Long Is. R. R.,* 95 AD2d 671).

In addition, under the circumstances of this case, the pain and suffering award will not "deviate materially from what would be reasonable compensation" if reduced from $2,500,000 to $1,500,000 *(cf., Pavia v Rosato,* 154 AD2d 519; *Mesick v State of New York,* 118 AD2d 214; *Poulos v City of New York,* 99 AD2d 709). We note in this regard that the plaintiffs established at the trial that Patrick Sullivan was in virtually constant physical and emotional pain for the more than three years of conscious life that he endured following the accident *(cf., Grcic v City of New York,* 139 AD2d 621). If the plaintiff Mary Sullivan declines to stipulate to this amount, a new trial is also granted as to conscious pain and suffering.

The 9% rate of interest provided for in the judgment must be reduced to 3% with respect to the the Metropolitan Transportation Authority and New York City Transit Authority

(Public Authorities Law § 1212 [6]). Bracken, J. P., Harwood, Eiber and O'Brien, JJ., concur.