■ ANDREW ALTMAN et al., Respondents, v ALPHA OBSTETRICS AND GYNECOLOGY, P. C., et al., Defendants, and MAIMONIDES MEDICAL CENTER, Appellant. [679 NYS2d 642] —In an action, *inter alia,* to recover damages for medical malpractice, etc., the defendant Maimonides Medical Center appeals from a judgment of the Supreme Court, Kings County (Levine, J.), dated December 9, 1997, which, upon a jury verdict and an order denying its motion, *inter alia,* pursuant to CPLR 4404 (a) to

set aside the verdict, is in favor of the plaintiffs and against it in the principal sum of $9,437,482.

Ordered that the judgment is affirmed, with costs.

It is well settled that in determining whether a jury verdict is based upon insufficient evidence as a matter of law, the relevant inquiry is "whether 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (*Mirand v City of New York,* 84 NY2d 44, 48-49, quoting *Cohen v Hallmark Cards,* 45 NY2d 493, 499). In contrast, in determining whether a jury verdict is against the weight of the evidence, the operative question is whether "the jury could not have reached the verdict on any fair interpretation of the evidence" (*Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643; *see, Panzarino v Carella,* 247 AD2d 521).

Contrary to the claim of Maimonides Medical Center (hereinafter the Hospital), the plaintiffs' counsel did not argue, during the second day of his summation, an entirely novel theory of liability, based on delay. The theory was clearly set forth in the plaintiffs' verified bill of particulars as to the Hospital, in which the plaintiffs asserted that the Hospital was careless and negligent "in failing to timely and properly examine the mother of the infant plaintiff * * * in failing to timely and properly treat the prolapsed cord and fetal distress [and] in failing to perform a timely Ceasarean [*sic*] section". Moreover, both sides adduced testimony on this issue.

With regard to the merits of the Hospital's contention as to the sufficiency of the evidence, the trial record provides ample support for the jury's finding of liability. Considering the evidence in the light most favorable to the plaintiffs, it cannot be said that it was irrational for the jury to conclude that the Hospital departed from accepted medical practice in diagnosing and treating the prolapsed cord condition of the mother of the injured plaintiff, and that such negligence was a proximate cause of the infant plaintiff's injuries (*see, D'Abbraccio v New Rochelle Hosp. Med. Ctr.,* 233 AD2d 539, 540; *Chazon v Parkway Med. Group,* 168 AD2d 660, 662). While the Hospital presented testimony to the contrary, "the credibility of the witnesses and the accuracy of their testimony were issues for the jury to determine" (*Rosenberg v Rixon,* 111 AD2d 910, 911; *see, Panzarino v Carella, supra*). Similarly, while the mother expressed some uncertainty during cross-examination as to the timing of events, and made some statements that, in essence, contradicted her direct testimony, it has long been settled that

"answers elicited on cross-examination cannot be deemed, as a matter of law, a retraction or correction of the statements made in the direct examination" (*Ochs v Woods,* 221 NY 335, 340; *see also, Gunder v Murthy,* 185 AD2d 915, 916; *Dranofsky v Collins,* 271 App Div 932, 933).

Further, the jury's verdict against the Hospital rests upon a fair interpretation of the evidence, and thus cannot be said to be contrary to the weight of the evidence (*see, Panzarino v Carella, supra; Nicastro v Park,* 113 AD2d 129, 134).

Turning to the damages award, this Court has consistently recognized that an infant plaintiff may recover for future lost earnings "even where the computation of such damages ' "is necessarily speculative and fraught with difficulties" ' " (*Sullivan v Locastro,* 178 AD2d 523, 527, quoting *Kavanaugh v Nussbaum,* 129 AD2d 559, 563, *mod on other grounds* 71 NY2d 535). Here, there is evidence that, but for his injuries, the infant plaintiff likely would have obtained at least a college degree and received financial benefits commensurate with such a degree. The record reveals that education, as well as scholastic performance, is of considerable importance to the plaintiffs' family. At the time of trial, the infant plaintiff's father was a high school teacher and had obtained his doctoral degree in education. His older brother was a student at Tufts University, where he was on the Dean's List and a member of the Golden Key Honors Club. It is, therefore, highly likely that the infant plaintiff would have attended and graduated from college. Based upon the testimony of the plaintiffs' economist and the Hospital's failure to rebut that testimony, the record supports the jury's determination that the infant plaintiff's earning capacity was impaired to the extent of $3,000,000 (*see, Chazon v Parkway Med. Group, supra; Kavanaugh v Nussbaum, supra*).

We have considered the appellant's remaining contentions and find them to be without merit. Bracken, J. P., Pizzuto, Friedmann and Luciano, JJ., concur.