(August 11, 1980)

■ Jo A. Barry, an Infant, et al., Respondents-Appellants, v Gary A. Manglass et al., Defendants, and General Motors Corporation, Appellant-Respondent. (Action No. 1.) Robert J. McElroy et al., Respondents, v General Motors Corporation, Appellant. (Action No. 2.)—In jointly tried actions to recover damages for personal injuries, etc., defendant General Motors Corporation appeals, as limited by its brief, from so much of two judgments of the Supreme Court, Rockland County, entered March 9, 1979

(in Action No. 1) and April 30, 1979 (in Action No. 2), as are in favor of the plaintiffs and against it in both actions, upon a jury verdict. The appeal by General Motors brings up for review an order of the same court, dated February 21, 1979, that denied its motion to set aside the verdict; the plaintiffs Barry "cross appeal" from so much of the same order as denied their cross motion for interest dating from the verdict at the first trial. "Cross appeal" dismissed (see *Matter of Aho*, 39 NY2d 241, 248). The order is reviewed upon the appeal from the final judgment. Judgments affirmed insofar as appealed from. One bill of costs payable by General Motors is awarded to plaintiffs appearing separately and filing separate briefs. These actions were commenced as a result of a two-car collision, perfectly described in the opinion of Mr. Justice Shapiro in *Barry v Manglass* (55 AD2d 1, 3-4), upon the appeal of the defendants General Motors and Manglass from the judgments entered after the first trial:

## "THE ACCIDENT

"On January 8, 1972 Gary A. Manglass was operating a 1969 Chevrolet Nova in Mount Ivy, Ramapo, New York. He was alone in the car. He made a left turn from Old Route 202 to go south on Route 45, a two-lane north-south road, with a painted line down the center. The car was proceeding at a speed of 50 to 60 miles per hour either as it started into the turn or when it came into the southbound lane (the eyewitness testimony is not clear as to this). Suddenly the car appeared to be out of control and began weaving from one lane to the other. It struck a vehicle proceeding north which was operated by Beverly McElroy, injuring her and her passengers (her daughter Margo and Joanna and Jo-Ann Barry). Manglass was rendered unconscious and claimed that he had no recollection of the accident or of its immediate antecedents. The Barrys and McElroys sued Gary A. Manglass and Janice E. Manglass, owner of the Nova, for negligence and they sued General Motors for alleged defects in the car which Gary Manglass was operating. The Manglasses sued General Motors but did not sue Beverly McElroy."

## "THE CONTENTIONS OF THE PARTIES

"The basis of the claim against General Motors was an alleged defect in the left motor mount securing the engine block to the frame of Manglass' 1969 Nova. Experts testifying on behalf of the Barrys contended that the left motor mount separated into two parts prior to the collision and that that caused the engine to rise above its rotational axis and bind the accelerator linkage, resulting in an open-throttle posture. General Motors, while admitting that, after the accident, the left motor mount was separated from the framework, contended that that condition was a result of the collision which, they claimed, was caused by Gary Manglass' loss of control of the car after making the turn at too great a speed. General Motors also contended that, because there was an absence of scarring on the surface of the motor mount, even if the separation had existed prior to the accident, it was not the cause of the malfunction of the accelerator linkage. Further, argued General Motors, motor mount failure would not have had an effect on the steering of the vehicle. Experts on behalf of the Barrys testified that the motor mount failure preceded the accident and caused an unintended increase in the speed of the car as it was making the turn." In addition, the opinion noted that portions of two recall letters issued to Chevrolet owners were introduced into evidence over objection by General Motors and that General Motors, on appeal, contended that that was reversible error. This court held (p 10) the letters were admissible *if* the trial court made clear to

the jury that the letters did not establish that the defect was present in the particular vehicle. A new trial was ordered because the trial court's instructions had failed to so provide; in fact, the instructions given on the exhibits had been precisely to the contrary (p 11). The verdict on damages was held in abeyance, pending the new trial limited to liability and the apportionment of damages. It is from a verdict in favor of the plaintiffs Barry and McElroy upon the retrial that General Motors now appeals. The apportionment of the damages upon the retrial, not challenged on this appeal, is 65% against General Motors and 35% against Manglass. General Motors contends that the jury's verdict finding it liable for negligence but absolving it on strict products liability is inconsistent and must be set aside. General Motors also contends that the verdict in favor of Janice Manglass on her breach of warranty claim is further evidence that the jury returned irreconcilable verdicts. General Motors maintains that "under the law of this state and the trial court's specific charge to the jury * * * a verdict for plaintiffs on negligence required a finding of every element necessary for a finding in their favor based on strict products liability. Consequently, the jury's verdict in favor of General Motors on the strict liability claims required a finding in its favor on the negligence causes of action as well." We disagree. An examination of the instructions reveals that the jury followed them explicitly.* The verdict is consonant with the instructions and is supported by the evidence. Moreover, the instructions are in accord with the established theories of negligence and strict products liability (see *Robinson v Reed-Prentice Div. of Package Mach. Co.,* 49 NY2d 471, 478-479; *Codling v Paglia,* 32 NY2d 330, 342; *Jerry v Borden Co.,* 45 AD2d 344, 348; cf. *Jimenez v Sears, Roebuck & Co.,* 4 Cal 3d 379). There is no doubt that the jury found that the 1969 Chevrolet Nova had a defect. As the instructions were given, however, the jury could also find that the vehicle was not being used "for the purpose and in the manner normally intended". This was an instruction given by the court with respect to strict products liability that was *not* part of the instructions with respect to negligence. In order to find General Motors liable under the theory of strict tort, the trial court instructed the jury that, in addition to finding that there was a defect that was a substantial factor in bringing about "the plaintiffs' injury", the jurors had to find, *inter alia,* that at the time of the accident this Nova in fact was being used for the purpose and in the manner normally intended. That element is what the jury did not find. The evidence supports a finding by the jury that Gary Manglass made a sharp left turn at a negligently high rate of speed, which supports an inference that Manglass' use of the Nova at the time of the accident was beyond and outside the automobile's normal use. (The jury determined that Gary Manglass was 35% responsible to the plaintiffs Barry and McElroy in negligence. Consistently, the jury found against Gary Manglass and in favor of General Motors on his claims for negligence and breach of implied warranty.) Under instructions on negligence with respect to General Motors, the jury had to find that the "1969 Nova * * * caused [plaintiff's] injury, that the product was defective * * * that such a defect in the motor mount * * * was reasonably certain to be dangerous when put to normal use, that * * * General Motors, failed to exercise reasonable care in making the product or inspecting it * * * or that even though the defendant

---

* The instructions on negligence and strict products liability to which we refer are in the record at pages 1680-1685, 1693-1701, 1718-1721. These instructions were reread to the jury upon their request during deliberations. The instructions on breach of warranty are at pages 1714-1716.

exercised [such] reasonable care * * * he *[sic]* learned before he put it on the market of a defect, your finding will be that the defendant was negligent". In holding General Motors liable in negligence, the jury could find these elements, including the fact that the defect *even under normal use* was "reasonably certain to be dangerous". The testimony of General Motors' own engineer (Chester Fehlberg) was that the company knew at least in 1967 that the noninterlocking motor mount posed a problem. If the jury found—as discussed above—that Gary Manglass' use of the Nova was beyond its normal use, then the instructions precluded a verdict in favor of the plaintiffs on strict products liability but nonetheless permitted a verdict against General Motors on negligence. There is no inconsistency in the verdict. As to Janice Manglass' recovery against General Motors, it is clear that, again, the jury followed the trial court's instructions. The court instructed the jury that Mrs. Manglass, as the owner of the vehicle, would not be barred by the contributory negligence of her husband in her negligence claim *for the value of her automobile.* (See *Mills v Gabriel,* 259 App Div 60, affd 284 NY 755.) The jury's verdict in her favor on negligence comports with the instructions. It logically follows that the verdict in her favor on the warranty claim was on her *express* warranty as the owner of the vehicle. Therefore, no one recovered on strict products liability or breach of implied warranty, and the verdicts as rendered are neither irreconcilable nor inconsistent. We find no merit to General Motors' further contention that the summation of the attorney for plaintiffs Barry was so inflammatory that it precluded a fair verdict and diverted the jury's consideration of the proper issues. As the trial court noted, whatever comments might be considered offensive comprised a very small percentage of the two-hour long summation and were not so out of bounds as to require a new trial. The Barry plaintiffs may not have interest measured from the date of the verdict on liability at the first trial. General Motors did nothing here to thwart said plaintiffs' rights; it merely took its lawful appeal. That appeal resulted in a reversal of the liability verdict, which is not revived by plaintiffs' success upon the retrial. (Cf. *Lindwall v Talent Cab Corp.,* 51 Misc 2d 381, affd 27 AD2d 647.) Hopkins, J. P., Rabin, Cohalan and Weinstein, JJ., concur.