■ ANIBAL GONZALEZ, Respondent, v CITY OF NEW YORK et al., Appellants, et al., Defendant.—In a negligence action to recover damages for personal injuries, the defendants City of New York and Joseph Ferraro separately appeal, as limited

by their respective briefs, from so much of a judgment of the Supreme Court, Queens County (Nahman, J.), entered September 8, 1987, as, after a jury trial, *inter alia,* is in favor of the plaintiff and against them in the principal sum of $2,036,458.34.

Ordered that the judgment is modified by deleting the provision thereof which directed the payment of interest measured "from the 3rd day of February, 1984" and substituting therefor the language "from the 13th day of May, 1987"; as so modified the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for the entry of an appropriate amended judgment accordingly.

On January 27, 1981, at approximately 4:40 P.M., the plaintiff was struck by a motor vehicle operated by the defendant Levin which had skidded on a patch of ice. At the time of the accident, the plaintiff, who intended to cross the six-lane-wide Northern Boulevard in Queens at midblock, was standing at the curb behind the illegally parked car of the defendant Ferraro. As a result of the impact, the plaintiff was pinned between Levin's and Ferraro's cars, ultimately requiring the amputation of both legs above the knee.

The plaintiff claimed that both Levin and Ferraro were negligent in the operation of their respective vehicles and that by illegally parking his car in a lane which, at the time of the incident, was intended to be free of obstructions so as to accommodate commuters traveling eastbound from Manhattan, defendant Ferraro created a hazardous condition. The City of New York (hereinafter the City) was alleged to have been negligent for its failure to remove an extraordinary amount of ice from Northern Boulevard, which prevented the Levin car from coming to a stop in sufficient time to avoid striking the plaintiff.

On a prior appeal from a judgment in favor of the plaintiff and against each of the defendants, this court, concluding that the jury's failure to apportion any fault to the plaintiff could not be sustained, reversed the judgment insofar as appealed from by the defendants Ferraro and the City and remitted the matter for a new trial with respect to the issues of their liability, any cross claims asserted by them, and apportionment of damages *(Gonzalez v City of New York,* 123 AD2d 666). Since the defendant Levin had failed to perfect his appeal from the judgment apportioning his fault at 50%, his appeal was dismissed, and inasmuch as no claim had been asserted concerning the amount of damages awarded by the

jury, $2,125,000, and Levin's liability was fixed, the new trial was limited to the issue of the liability of these defendants *(Gonzalez v City of New York, supra).* Upon the retrial, liability was found as against each of these defendants and the plaintiff was found to have been contributorily negligent. On stipulation by the parties, the jury's apportionment of fault was adjusted to reflect the assessment that Levin was 50% at fault, as fixed at the first trial.

We first address the City's claim that the plaintiff failed to prove actionable negligence and that the trial court thus erred in denying its motion for judgment as a matter of law. Of course, the mere happening of an accident does not constitute negligence *(Ostrowski v Board of Educ.,* 31 AD2d 571, 572). A municipality is obligated to keep the streets within its jurisdiction in a reasonably safe condition for travel *(Hooker v Town of Hanover,* 247 App Div 623, 625). The duty "to keep its streets in a suitable condition for public travel * * * extends to the removal of dangerous and exceptional accumulations of snow and ice" *(Williams v City of New York,* 214 NY 259, 264). To render a municipality liable for an injury caused by the presence of snow and ice on the streets, it must be established that the condition constitutes an unusual or dangerous obstruction to travel *(Williams v City of New York, supra)* and that either the municipality caused the condition or a sufficient time had elapsed to afford a presumption of the existence of the condition and an opportunity to effect its removal *(Harrington v City of Buffalo,* 121 NY 147, 151; *Valentine v City of New York,* 86 AD2d 381, 383, *affd* 57 NY2d 932). Moreover, it is widely recognized that: "In discharging its duty of snow removal a municipality, of necessity, must establish a set of priorities. The nature and extent of the measures which it undertakes are important in determining the reasonableness of its response and in resolving the ultimate question of whether a sufficient period of time has elapsed so as to charge it with negligence for its inaction in clearing a specific area" *(Valentine v City of New York, supra,* at 386; *see, Yonki v City of New York,* 276 App Div 407).

Generally, whether a municipality was negligent in permitting extraordinary accumulations of snow to exist for an unreasonable period of time or whether it had a reasonable opportunity to remedy the condition are questions for the jury *(Valentine v City of New York, supra; Yonki v City of New York, supra,* at 410), and, on this record, the trial court properly determined that issues ripe for the jury's resolution existed.

The evidence adduced at trial revealed that during what amounted to a total snowfall of about 6.6 inches during the first 16 days of January 1981, the City employed all three methods of snow removal typically utilized, i.e., salting, plowing and scattering. The persistence of an icy condition in the right lane of Northern Boulevard, which is designated a primary route and is therefore accorded priority for immediate snow removal, for 11 days subsequent to the performance of the final snow removal operation warranted the conclusion that a question of fact existed as to whether the City, which certainly had ample time to act, adequately cleared the streets in the first instance and should have conducted further operations to remedy the condition. Inasmuch as the right lane was opened up to commuter traffic on weekdays between the hours of 4:00 P.M. and 7:00 P.M., during which time standing was prohibited, a rational jury could conclude that it was incumbent upon the City to clear that lane and that its failure in this regard was a proximate cause of the accident.

Similarly supported by sufficient evidence warranting submission to the jury was the plaintiff's alternate theory of liability, i.e., that the City's January 20th "snow scattering" operation created the dangerous condition in the traffic lane in question. The expert testimony elicited at this trial established that such a procedure entails the dissemination of snow previously piled to alongside the curb into the three eastbound lanes to accelerate melting. This action would, according to the experts, either create hazardous "icy conditions" or exacerbate existing conditions when performed at a time during which it is contraindicated, i.e., in sub-40 degree weather when the scattered snow is less likely to melt, in contravention of City guidelines. Having demonstrated that a "clearing" operation impacts on the lane in question by scattering snow upon it, that such a procedure was performed on January 20th, one week before the accident, when the temperature was only 30 degrees, that such an action represented a departure from good practice and that circumstances were therefore ripe for the creation of a hazardous condition, the plaintiff established a prima facie case of negligence against the City.

The defendant Ferraro's claim that the plaintiff failed to establish, as a matter of law, that the illegal parking of his automobile was a proximate cause of the plaintiff's injuries because the presence of Ferraro's vehicle merely furnished the condition or occasion for the accident and did not cause the injuries sustained (see, Sheehan v City of New York, 40 NY2d 496) is similarly unavailing. The defendant Ferraro had a

duty to exercise reasonable care in the manner in which he parked his car. To satisfy the burden of establishing a prima facie case against Ferraro, the plaintiff was required to show that Ferraro's negligence was a "substantial cause of the events which produced the injury" *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315). The plaintiff was not, however, required to demonstrate that the precise manner in which the accident happened, or the extent of the injuries, was foreseeable *(Derdiarian v Felix Contr. Corp., supra,* at 315). Whether Ferraro breached the duty imposed on him by parking his vehicle in an icy lane in which standing was prohibited and which he acknowledged was then actively traveled, since it was the rush hour, what dangers were reasonably foreseeable from the manner in which his car was parked, and whether his conduct was a proximate cause of the accident, were all issues for the jury's determination *(see, Ferrer v Harris,* 55 NY2d 285, *mod* 56 NY2d 737; *O'Connor v Pecoraro,* 141 AD2d 443; *Giordano v Sheridan Maintenance Corp.,* 38 AD2d 552). For, as in *Ferrer v Harris* (55 NY2d 285, 293-294, *supra):* "to say the least, the connection between the disobedience of the traffic regulation and the happening of the accident was logical and immediate enough to have permitted the jury to find that [Ferraro's] negligence was a substantial proximate cause of the event which produced the injury".

We reject the City's assertion that the jury verdict attributing only 5% culpability to the plaintiff, which was thereafter modified upon stipulation of the parties to 4.16%, is against the weight of the credible evidence. While this court concluded on the appeal after the first trial that the jury's exoneration from fault of the plaintiff could not be sustained in light of the evidence adduced that "he was standing in the icy roadway in the path of oncoming traffic" *(Gonzalez v City of New York,* 123 AD2d 666, 667, *supra),* in light of the plaintiff's testimony on this trial, which differed from that elicited at the first trial, that he could recall standing *on* the curb immediately prior to the impact waiting for the opportunity to cross and that, even had he stepped into the street, he was, nevertheless situated alongside the curb, it cannot be said that the jury could not have reached this apportionment on any fair interpretation of the evidence *(see, Nicastro v Park,* 113 AD2d 129).

In light of the prior determination pronouncing the defendant Levin negligent, which remained undisturbed, we agree with defendant Ferraro's argument that the jury should have been charged that this defendant was negligent as a matter of

law. Since the jury found liability on the part of Levin, however, we conclude that any error in this regard was harmless *(see,* CPLR 2002).

The trial court's award of interest to the plaintiff measured from the date of the jury verdict in the first trial was, as the City asserts, improper. In *Barry v Manglass* (77 AD2d 887, *affd* 55 NY2d 803), this court rejected the plaintiffs' claim, responsive to the defendants' argument on appeal from a jury verdict against them after retrial, that they were entitled to recover interest calculated from the date of the verdict on liability at the first trial, reasoning that the appealing defendant should not, in effect, be penalized for "merely [taking] its lawful appeal", which, having resulted in a reversal of the liability verdict, was not revived by the plaintiffs' success upon the retrial *(Barry v Manglass,* 77 AD2d 887, 890, *supra).* The same result obtains here. While the plaintiff accurately observes that *Barry* is somewhat distinguishable inasmuch as defendant Levin's joint and several liability for the unchallenged $2,125,000 award was fixed from the date of the first verdict, we conclude that the rationale underlying that decision should, nevertheless, control.

CPLR 5002 provides for the accrual of interest upon the total sum awarded "from the date the verdict was rendered * * * to the date of entry of final judgment." This statutory provision was designed so that "plaintiffs [would] be compensated with interest for the delay in payment of the principal award certainly due them" *(Gunnarson v State of New York,* 70 NY2d 923, 924). Unlike those situations wherein the delay in payment is chargeable to one of the parties to the action, such as where a defendant appeals from an interlocutory judgment of liability *(see, e.g., Gunnarson v State of New York, supra; Trimboli v Scarpaci Funeral Home,* 37 AD2d 386, *affd* 30 NY2d 687), or where a plaintiff in a personal injury action refuses to stipulate to accept a lesser amount of damages than awarded by the jury, opting instead to retry the issue of damages *(see, Brizer v City of New York,* 51 AD2d 791; *Lindwall v Talent Cab Corp.,* 51 Misc 2d 381, *affd* 27 AD2d 647; *see also, Malkin v Wright,* 64 AD2d 569), the appellants, as in the *Barry* case *(supra),* simply took their lawful appeals. It follows that the imposition of such a "penalty" upon the appellants for a purported delay in payment would be unwarranted in light of the concept that: " 'Interest is the ordinary incident for the nonpayment or delay in payment of a principal obligation and is recoverable as just compensation for the detention of money due * * * It is given as damages for delay in

payment of the principal obligation, and is said to be an invariable legal incident of the principal debt *whenever a debtor knows precisely what he is to pay and when he is to pay' "*, but fails to do so *(Malkin v Wright, supra,* at 570; 36 NY Jur 2d, Damages, § 117). Inasmuch as both the appellants' obligation to pay and the amount of the award were not finally fixed until the jury rendered its verdict in the second trial, a "delay" attributable to none of the parties, interest on the verdict should be calculated from May 13, 1987, the date the second jury verdict was rendered *(cf., Malkin v Wright, supra; Zegman v State of New York,* 99 Misc 2d 473).

We have examined the defendant Ferraro's remaining contentions and find them to be either unpreserved for our review or without merit. Bracken, J. P., Lawrence, Kunzeman and Kooper, JJ., concur.