**FEDERAL INSURANCE COMPANY,**
Plaintiff,

v.

**PGG REALTY, LLC, et al., Defendants.**

No. 06 Civ. 2455(JSR).

United States District Court, S.D. New York.

Jan. 9, 2008.

John Anthony Vincent Nicoletti, Thomas Michael Rittweger, Val Edmund Wamser, Kevin John Byron O'Malley, Terry L. Stoltz, Nicoletti Hornig & Sweeney, New York, NY, for Plaintiff.

Patrick Michael Leathem, Weg and Myers, P.C., Joseph Koczko, Joseph Bernard Koczko, Thompson Hine LLP, New York, NY, Harold W. Henderson, Thompson Hine LLP, Cleveland, OH, for Defendants.

*MEMORANDUM ORDER*

JED S. RAKOFF, District Judge.

Following a lengthy bench trial, the Court is presently drafting, and expects to issue in the next few weeks, its findings of fact and conclusions of law on disputes in this case between plaintiff, Federal Insurance Company ("Federal"), and the primary defendants, PGG Realty, LLC ("PGG"), and PGG's sole shareholder, Ben Ashkenazy. However, certain outstanding issues regarding a co-defendant, KeyBank National Association ("Key"), can be resolved at this time.

At all times relevant to the instant issues, PGG owned the "Princess Gigi," a 124–foot luxury yacht that capsized off the coast of San Salvador on February 6, 2006, sustaining irreparable damage. PGG had purchased the yacht for $7,535,400 in December, 2005. The purchase was financed by a $5.85 million mortgage from defendant Key, and the accompanying Marine Note required PGG to make monthly payments to Key in the amount of $43,238.01 beginning in January, 2006. *See* Declaration of Leslie A. Jones dated July 3, 2007 ("Jones Decl.") at ¶ 7.

The Princess Gigi was insured for $7,023,000.00 on an all-risks basis by plaintiff Federal. The insurance policy contained a Breach of Warranty Endorsement ("Warranty Endorsement") in favor of Key as loss payee. The Warranty Endorsement provided that Key's coverage would not be invalidated by any act, negligence, or breach of warranty by PGG unless the act occurred with the consent or knowledge of Key. Breach of Warranty Endorsement, Exhibit A to Declaration of Patrick M. Leathem, Esq. ("Leathem Decl.") dated July 20, 2007.

Shortly after this lawsuit was filed, Key moved for partial summary judgment

against Federal, seeking the unpaid balance of the mortgage pursuant to the terms of the Warranty Endorsement. By summary order dated September 13, 2006, the Court granted the motion, and set forth its reasons for the ruling in a Memorandum Order dated April 15, 2007. The Court found that "[e]ven accepting, *arguendo*, that Federal had one or more valid grounds for denying coverage with respect to PGG, no admissible evidence in the record could reasonably support an inference that Key knew of or consented to any such grounds." *Federal Insurance Co. v. PGG Realty, LLC, et al.*, 2007 WL 1149245 at *4 (S.D.N.Y. Apr.17, 2007). The Court also held that the duty of utmost good faith, or *uberrimae fidei*, an ancient rule of maritime insurance generally applied to contracts between an insurer and insured, did not apply to marine mortgagee Key, but further held that, even assuming, *arguendo*, that the duty were to apply, there was no evidence of a breach of the duty by Key. *Id.* The Court therefore ordered Federal to pay the outstanding mortgage balance, plus any prejudgment interest at the rate of 6.39%. *Id.* at *14.

This still left pending Key's cross-claims against PGG and Ashkenazy, but all parties agreed to postpone further adjudication of those claims until after the conclusion of the bench trial on the separate issue of Federal's liability to PGG. Once the trial concluded, Key moved for summary judgment on the cross-claims, seeking the unpaid principal on the mortgage note as well as interest, late charges, and attorneys' fees and expenses of collection and of enforcing Key's rights as lender. Key also moved, pursuant to Fed.R.Civ.P. 54(d)(2), for an award of attorneys fees against Federal.

The Court turns first to Key's cross-claims against PGG and Ashkenazy. In connection with Key's mortgage, PGG executed a Marine Note and Ashkenazy executed a Guaranty. Pursuant to the Marine Note, PGG undertook to pay Key principal of $5.85 million and interest at an annual rate of 6.39% in 240 monthly installments of $43,238.01, commencing on January 13, 2006. Marine Note and Security Agreement With Disclosure Statement ("Marine Note") ¶¶ 1–2, Exhibit 13 to Declaration of Terry L. Stoltz In Opposition to KeyBank's Motion for Attorneys' Fees ("Stoltz Decl.") dated July 20, 2007. The Marine Note also provided that the borrower would be in default if any payment was made more than ten days late or if the vessel was damaged such that the value of the collateral was diminished for more than thirty days. *Id.* ¶ 43(a) & (j). Still further it provided that, if the borrower was in default, the lender could declare the unpaid principal and interest immediately due and could require the borrower to pay all collection, enforcement and court costs. *Id.* ¶ 44(a) & (k). Pursuant to the Guaranty, Ashkenazy became a surety for PGG and irrevocably and unconditionally guaranteed to pay Key all liabilities incurred by PGG, including principal and interest on the mortgage as well as enforcement expenses. Continuing and Irrevocable Guaranty ("Guaranty") at ¶¶ 1–2, Exhibit 14 to Stoltz Decl.

As it happens, PGG has made no monthly installment payments on the Marine Note since March, 2006. Jones Decl. ¶ 8–9. Similarly, Ashkenazy does not claim that he has paid any sum to Key under the Guaranty. Under the Marine Note, PGG's failure to make payments constitutes a default, as does the total loss of the yacht, since the value of the Princess Gigi has certainly been diminished for more than 30 days. Marine Note ¶ 43(a) & (j). Mr. Ashkenazy's failure to pay the liabilities of PGG similarly constitutes a breach of the Guaranty. Guaranty ¶ 13. PGG and Ash-

kenazy are therefore liable to Key for the unpaid principal, accrued interest, late charges, attorneys' fees and collection expenses.

■ While not disputing any of the above, PGG and Ashkenazy make three arguments directed at reducing the amount of the award. First, they claim that although the Marine Note requires PGG, in case of default, to pay attorneys' fees and collection costs to Key, nothing in the note requires PGG to pay the costs of Key's litigation against Federal, a third party. Memorandum of Law in Opposition to Motion of KeyBank for Summary Judgment on its Cross Claims Against Defendants PGG Realty, LLC and Ben Ashkenazy ("PGG Opposition Memo") at 5. However, the Marine Note itself is not so limited. Instead, it requires PGG to pay "all collection, enforcement, and court costs, including, but not limited to ... all reasonable fees and expenses of attorneys and paralegals incurred by Lender." Marine Note ¶ 44(k). The note thus makes no distinction between sums incurred by Key in litigation against PGG and sums incurred by Key in litigation against third parties. Moreover, Key had to incur litigation expenses against Federal only because PGG and Ashkenazy breached the Marine Note and Guaranty. If the monthly installment payments had been paid by PGG over the past twenty two months, Key would not have had any interest in whether Federal denied coverage for the yacht.

Second, PGG and Ashkenazy claim that they should not be held liable for such costs as were incurred after entry of this Court's Order on September 13, 2006 that are attributable to delay in the "Court's ministerial act of entry of judgment." PGG Opposition Memo at 5. Quite aside from the fact that there was no such delay, as the time for entry of final judgment in this case has not yet arrived, the argument misapprehends the relevant law. PGG and Ashkenazy rely on *Gonzalez v. City of New York*, 148 A.D.2d 668, 673–74, 539 N.Y.S.2d 418 (2d Dept.1989), a New York state case holding that interest should not accrue from the date of the initial verdict where a defendant successfully appeals and then loses again at retrial. However, Key does not rely on the New York state statutory provision providing for the accrual of interest at issue in *Gonzalez*. Instead, it relies on its contract with PGG. Therefore, when interest begins to accrue under a New York statute is irrelevant because, as explained, *infra*, the existence of a separate judgment against Federal would in no way have erased the independent contractual obligation of PGG and Ashkenazy to make payments on the Note until their debt was satisfied.

Lastly, PGG and Ashkenazy argue that "the doctrine of election of remedies bars KeyBank from seeking damages from Defendants, when it has already obtained a valid judgment against indisputably solvent Federal for the amount of the mortgage, but has been unable to or chosen not to execute said judgment." PGG Opposition Memo at 6. This argument seems to proceed in two parts—first, that if Key were to succeed against both Federal and PGG, it would receive an impermissible double recovery, and second, that Key waived its right to proceed against PGG by proceeding against Federal first and failing to seek prompt payment from Federal.

■ The first point is mystifying. While double recovery is barred, it is well-established that, until finally paid, a claimant may seek recovery of the same loss from two different parties. *See* 18B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4476, at 539 (2nd ed.2002) (referring to the "general rule that pursuit of remedies against one

party is not an election that forecloses remedies against another party"). Such a claimant is, of course, only entitled to a single satisfaction of the debt, *Citizens Sav. & Loan Ass'n of N.Y. v. Proprietors Ins. Co.*, 78 A.D.2d 377, 381, 435 N.Y.S.2d 303 (2d Dept.1981), but, as Key correctly states, it is "not seeking a double recovery . . . from both Federal Insurance and Ashkenazy. Rather, Key is seeking judgments against both Federal Insurance and Ashkenazy in order to obtain a single satisfaction of the foregoing losses from whichever party ultimately can be required to pay." Reply Memorandum in Support of Motion of KeyBank for Summary Judgment on its Cross–Claims Against Defendants PGG Realty, LLC and Ben Ashkenazy ("Cross–Claims Reply") at 4–5.

■ As to the second point, even if Key had "sat on its rights" with regard to collecting payment from Federal, which it has not, that would not bar Key from obtaining a judgment against Ashkenazy unless Key not only had a valid judgment against Federal but also the judgment had been paid in full and such payment covered all sums owed by Ashkenazy under his agreements with Key.

Therefore, PGG and Ashkenazy are liable to Key for the unpaid principal, accrued interest, late charges, attorneys' fees and collection expenses associated with the Marine Note and Guaranty. Key should submit to the Court by no later than January 16, 2007 a statement of the amounts corresponding to these various items. Any objections to these calculations should be submitted by defendants PGG and Ashkenazy by no later than January 22, 2007. The Court will then issue a final order on this issue.

■ Key also moves, pursuant to Fed. R.Civ.P. 54(d)(2), for an award of attorneys' fees against Federal. As a preliminary matter, Federal argues that Key waived its claim for attorneys' fees by failing to expressly request such fees in its pleadings, even while expressly requesting them with respect to PGG. But the difference is fully explained by the fact that the request for fees as to PGG was pleaded in terms of an express contractual provision, while the request as to Federal is pursuant to Fed.R.Civ.P. 54. Rule 54(c) provides that a final judgment should grant the relief to which a party is entitled "even if the party has not demanded that relief in its pleadings," and settled Second Circuit law includes attorneys fees within the scope of this provision. *See Klarman v. Santini*, 503 F.2d 29, 36 (2d Cir.1974) ("We agree with appellants that their failure to specifically request attorney's fees and expenses in the event of dismissal of the third-party complaint does not in itself prevent their recovery").

■ Turning, then, to the merits, "the general rule is that the award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith. As a party subject to admiralty jurisdiction, marine insurers also are subject to this rule." *Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 309 (2d Cir.1987) (internal citations omitted). *Ingersoll* established a federal admiralty rule, "which . . . must be followed instead of state law." *Am. Nat'l Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 270 (2d Cir. 1995). *See also N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 130 (2d Cir.2001) ("attorneys' fees awards in admiralty suits are discretionary and based on a finding of bad faith").

The determination of whether a party has acted in bad faith is committed to the sound discretion of the district judge, subject to the caveat that "it is not bad faith for an insurer to fight liability when policy coverage is unclear." *See Kenealy*, 72

 

F.3d at 271. Federal urges this Court to adopt the standard for bad faith developed in *Sierra Club v. United States Army Corps of Eng'rs*, a non admiralty case. *See* 776 F.2d 383, 390 (2d Cir.1985) ("to award fees under the bad faith exception a court must find clear evidence that the losing party's claims were 'entirely without color *and* made for reasons of harassment or delay or for other improper purposes' ") (emphasis added). However, *Ingersoll* was decided just two years after *Sierra Club*. Had the Second Circuit intended that determinations of bad faith in the admiralty context be governed by the *Sierra Club* standard, it would have stated as much.

■ The Court finds, however, that applying *Ingersoll,* Federal did not act in bad faith, and that an award of attorneys' fees is therefore not appropriate. While this Court, in its Memorandum Order of April 15, 2007 setting forth the reasons for its Order of September 13, 2006 granting partial summary judgment to Key, found most of Federal's arguments distinctly unpersuasive, and at least one of its arguments "absurd," it nowhere indicated that the entirety of Federal's arguments were so entirely without color as to be indicative of bad faith. Unlike the typical cases in which courts have found attorneys fees proper under the *Ingersoll* rule, *see, e.g., One Beacon Ins. Co. v. Old Williamsburg Candle Corp.,* 2006 WL 2623244 at *1 (S.D.N.Y. Sept.13, 2006) (attempt to limit carrier's exposure was made in bad faith where the carrier's claim was a "thoroughgoing sham" based on a "phony document" and "patently false testimony"), Federal's legal assertions, though weak, were within the bounds of zealous advocacy.

For all of the foregoing reasons, Key's motion for summary judgment on its cross-claims against PGG and Ashkenazy is hereby granted, and its motion for an award of attorneys' fees against Federal is denied.

SO ORDERED.