■ MARGARET SCADUTO, as Administratrix of the Estate of FRANK SCADUTO, Deceased, Respondent, v FLORENTINO SUAREZ et al., Defendants, and DOCTORS' HOSPITAL OF STATEN ISLAND, Appellant.—In a medical malpractice action to recover damages for personal injuries, the defendant Doctors' Hospital of Staten Island appeals from a judgment of the Supreme Court, Richmond County (Sangiorgio, J.), dated May 13, 1988, which, upon a jury verdict, and, upon granting the plaintiff's motion, *inter alia,* to "correct" the verdict, is in favor of the plaintiff and against it in the principal sum of $75,000.

Ordered that the judgment is reversed, on the law, without costs or disbursements, and a new trial is granted to the appellant on the issue of damages only; the verdict as to the apportionment of fault is affirmed.

The record reveals that the plaintiff's decedent sustained personal injuries as a result of the medical malpractice of the defendant Doctors' Hospital of Staten Island and several individual physicians. The plaintiff settled the action against the physicians for $87,500. After a trial, the jury returned a unanimous verdict in favor of the plaintiff, finding the appellant to be 25% at fault. When the verdict was rendered, the following exchange took place with respect to the measure of damages to which the plaintiff is entitled:

"THE CLERK: Question No. 5: What was the full dollar amount of damages sustained by the plaintiff?

"FOREPERSON: $75,000. * * *

"FOREPERSON: * * *. Can I ask a question of the Court, please?

"THE COURT: Go ahead.

"FOREPERSON: I don't know if it's proper but for my own information I'm curious.

"THE COURT: If it's not, I'll tell you.

"FOREPERSON: We unanimously based the amount of money we felt should be awarded on the premise of the plaintiff's lawyer asking for $300,000.

"THE COURT: That's what he's asking for.

"FOREPERSON: I'm trying to make sure in my own mind that—

"[HOSPITAL'S COUNSEL]: I will object to any further statement.

"[PLAINTIFF'S COUNSEL]: Judge, I think there's been a misunderstanding.

"THE COURT: Go ahead.

"FOREPERSON: We based it on the amount of fault that we found with the hospital and used that percentage against the fee that the attorney for the plaintiff was asking for and we agreed on that unanimously.

"I'm just trying to clarify in my own mind. We didn't go over board or under. We felt it was fair.

"THE COURT: Let me just ask you one question.

"FOREPERSON: Yes, sir?

"THE COURT: I want all the jurors to answer this. Question No. 5 was what was the full dollar amount of damages *sustained* by plaintiff, the full dollar amount.

"FOREPERSON: Yes.

"THE COURT: Your answer was $75,000.

"FOREPERSON: Yes.

"THE COURT: That was your verdict right down the line? Everybody agreed with that?

"(Jurors nod affirmativly *[sic]*).

"THE COURT: You feel the total damages to the plaintiff is $75,000?

"FOREPERSON: Yes sir. The reason it was written twice is because I loused up and started to put down $75.

"THE COURT: That's all right.

"FOREPERSON: I'm sorry for that. That's a boo-boo.

"THE COURT: As long as it's clear that you agree.

"FOREPERSON: Yes.

"THE COURT: The total amount of damages *to be awarded* to the plaintiff is $75,000.

"FOREPERSON: Yes.

"THE COURT: Fine. No problem. Thank you very much. You are now excused" (emphasis supplied).

After the jurors were discharged, the plaintiff's attorney spoke to them in the presence of the counsel for the appellant. The plaintiff's attorney moved to set aside the verdict, stating: [PLAINTIFF'S COUNSEL]: [The hospital's counsel] and I in each other's presence have just spoken to members of the jury and they explained to both of us that they intended to award the full sum of $300,000 and that they made a mistake and thought they had to deduct from that sum the 75 percent negligence of Drs. Albano and Suarez and they did this in

error and mistakenly told the Court the full dollar value in the case, what they intended to award, was $75,000 when actually it was $300,000".

The trial court responded:

"THE COURT: The Foreman of the Jury attempted to explain how he arrived at the figure and I particularly polled the jury. I asked them twice was $75,000 the full amount of the damages sustained by the plaintiff. I asked is that what you're awarding, and their answer was consistent; yes, that's what we awarded.

"Thereafter, I discharged the jury and you went out in the hall to speak to them. I wasn't there. It wasn't in the courtroom.

"You come back and tell me that you feel by talking to the jurors a mistake was made.

"After the jury has been discharged I have no power to reconvene the jury or set aside the verdict on the basis of what you tell me. You may have a basis to set aside the verdict if you get affidavits from these jurors and establish that there is a mistake. But I'm not going to prejudge that question".

The court then granted the appellant's motion to dismiss the complaint pursuant to General Obligations Law § 15-108, inasmuch as the amount of the settlement exceeded the jury's purported total damages award of $75,000.

The plaintiff thereafter moved pursuant to CPLR 4404 to "correct" the verdict, to vacate the order dismissing the complaint, and to enter judgment in favor of the plaintiff and against the appellant in the principal sum of $75,000, representing 25% of $300,000. In support of the motion, the plaintiff submitted affidavits from 5 of the 6 jurors. The court granted the motion, and judgment was entered accordingly against the appellant in the principal sum of $75,000. We reverse and grant the appellant a new trial limited to the issue of damages.

As the trial court accurately observed, the correction of a jury verdict may be appropriate in those exceptional situations where it is clear that there has been a mere ministerial error in reporting the verdict (see, *Dalrymple v Williams*, 63 NY 361; *Wylder v Vicari*, 138 AD2d 482; *Pache v Boehm*, 60 AD2d 867). However, it is firmly established that where substantial juror confusion in fixing damages is occasioned by the court's instructions, the appropriate remedy is to grant a new trial on that issue (see, *Moore v Bohlsen Assocs.*, 141 AD2d

468; *Luppino v Busher,* 119 AD2d 554; *Wingate v Long Is. R. R.,* 95 AD2d 671). The record before us amply demonstrates the confusion of the jury in reaching a verdict. Indeed, even after repeated questioning by the court, it was unclear whether the jurors intended the $75,000 figure to represent the amount that the appellant should be required to pay the plaintiff, or the plaintiff's total damages. We conclude that this confusion resulted from the parties' failure to request, and the consequent absence from the trial court's charge of, an instruction to the effect that after apportioning fault, the jurors were to disregard that apportionment in fixing damages, thereby leaving it to the court to determine the appellant's share of those damages *(see, e.g.,* PJI 2:36.1 [Supp]; *Soto v City of New York,* 139 AD2d 551; *see also, Luppino v Busher, supra).* Accordingly, a new trial on the issue of damages is warranted. We further note that affidavits of jurors may not be considered in cases of this nature *(see, Luppino v Busher, supra; Russo v Jess R. Rifkin, D.D.S., P. C.,* 113 AD2d 570).

We have considered the appellant's remaining contentions and find that they either do not warrant reversal of the jury verdict as to liability, or are without merit. Rubin, J. P., Kooper, Sullivan and Balletta, JJ., concur.