■ CARL OGLE, Appellant-Respondent, v STATE OF NEW YORK, Respondent-Appellant. [594 NYS2d 824] —Mercure, J. Cross appeals from a judgment in favor of claimant, entered December 19, 1991, upon a decision of the Court of Claims (Hanifin, J.).

Claimant brought this action to recover for the State's failure to timely diagnose and treat his spinal tuberculosis

(Potts disease) while he was an inmate at State correctional facilities. Claimant alleged that, by reason of the State's delay in providing proper care, including the failure to administer follow-up tests for tuberculosis and to prescribe antituberculin drugs (hereinafter INH), claimant suffered spinal cord damage, 18 months of paraplegia and permanent injuries such as paresthesia, spastic gait and sexual dysfunction. Following a trial, the Court of Claims (1) found the State liable for malpractice, (2) assessed 20% comparative liability against claimant, and (3) determined claimant's damages to be $320,000. A judgment was entered awarding claimant the net sum of $256,000. Claimant appeals upon the ground of alleged inadequacy of the verdict and with respect to the assessment of comparative fault. The State cross-appeals as to the finding of liability.

We begin with a chronology of claimant's relevant medical history. Charged with robbery, claimant was sent to Rikers Island jail, a facility owned and operated by New York City, on November 26, 1985. He underwent a general physical examination, including a PPD test for tuberculosis. Because the test was positive, claimant was prescribed INH, which he received for one week until he was released on bail. Claimant was remanded to Rikers Island on October 7, 1986 upon his conviction for robbery. Rikers Island medical staff apparently did not resume any prophylactic INH treatment.

On November 6, 1986, claimant was transferred to Elmira Correctional Facility (hereinafter ECF) in Chemung County accompanied by a one-page Rikers Island medical record summary which indicated that claimant did not have any significant medical problems. He was given a complete physical examination and a PPD test. Although the State presented evidence to the contrary, the Court of Claims found that the test result was positive. Claimant soon began experiencing chest and stomach pains and physicians employed by the Department of Correctional Services (hereinafter DOCS) twice prescribed pain relievers. Claimant was transferred to Coxsackie Correctional Facility in Greene County on December 8, 1986, soon complained of lower chest and epigastric pain, and pain relievers were again prescribed.

Claimant was thereafter transferred to Ogdensburg Correctional Facility in St. Lawrence County on January 20, 1987 and given a complete physical examination by Ravinder Agarwal, a DOCS physician. Agarwal stated that claimant gave vague complaints of pain in the back and chest which were consistent with many illnesses, including anxiety neurosis.

Claimant testified that he was given more pain medication, that he had trouble walking, that DOCS physicians suggested he was faking and that he was thereafter assigned to three or four days of psychiatric evaluation. Claimant was referred to an outside neurologist on March 4, 1987 and thereafter to Upstate Medical Center (hereinafter Upstate) where he underwent surgery for Potts disease on March 18, 1987.

The Court of Claims determined that the State's medical malpractice manifested itself in, *inter alia,* a violation of DOCS policy requiring INH therapy in the case of inmates under the age of 35 who test positive for tuberculosis. The State challenges as against the weight of the evidence the Court of Claims' findings that claimant tested positive on the PPD test performed at ECF and that DOCS violated its own tuberculosis policy by not giving claimant preventive doses of INH.

It is well settled that "[i]n a nonjury case, this court has the power to weigh conflicting testimony and inferences that may be drawn from such testimony and can grant the judgment which upon the evidence should have been granted by the trial court" *(Mesick v State of New York,* 118 AD2d 214, 219, *lv denied* 68 NY2d 611). Nevertheless, we recognize that evaluation of the credibility of witnesses and quality of the proof can best be made by the trier of fact *(see, Monette v Monette,* 177 AD2d 802, 802-803; *De Luke v State of New York,* 169 AD2d 916, 917).

Initially, we find adequate record support for the Court of Claims' finding that the PPD test performed at ECF produced a positive result. Our review of the November 17, 1986 report of claimant's physical examination clearly dispels any suggestion that the test result was negative. Contrary to the State's claim, we find a basis for ascribing significance to the use of an "X" rather than a check-mark in the column labeled "laboratory tests". First, the legend on the report indicates that abnormal findings shall be indicated by the use of an "X" and the record is clear that the PPD test was administered on November 14, 1986, *three days before* the doctor signed this report. Second, under the handwritten entry concerning the PPD test, there is a further notation of "H/O BCG". In view of the uncontroverted expert testimony that a BCG inoculation could cause a positive PPD skin test, there would be no reason for this entry other than to explain why the test result was abnormal. Third, given the unrefuted fact that claimant had positive PPD tests at Rikers Island in 1985 and again at Upstate in 1987, even the State's expert concedes that the

disputed interim test would probably be positive. Giving proper deference to the trial court's assessment of the evidence and the testimony of DOCS physicians notwithstanding, the Court of Claims' finding here was not against the weight of the evidence.

For the same reasons, we agree with the Court of Claims that DOCS violated its policy mandating preventive therapy in cases like the instant one where an inmate has a positive PPD test and is under the age of 35. Further, the Court of Claims' determination of liability is supported by the testimony of claimant's expert, Dial Hewlett, that a patient with a positive PPD but with no other clinical or X-ray evidence of active tuberculosis will not develop Potts disease if given appropriate prophylactic drug therapy. It is not necessary, therefore, for us to reach the State's argument that any errors in diagnosis or treatment were mere errors in judgment. Under the circumstances of this case, the violation of DOCS policy of itself constitutes sufficient evidence of medical malpractice.

Turning to claimant's appeal, we find no basis for disturbing the Court of Claims' apportionment of liability. It is well established that culpable conduct, including the failure to reveal part of one's medical history, may diminish a victim's recovery in a medical malpractice case (see, 76 NY Jur 2d, Malpractice, § 211, at 229-231; see generally, White v State of New York, 167 AD2d 646) and is a question for the trier of fact (see, e.g., Donovan v Capozzi, 140 AD2d 485, 486). Here, the record supports a finding that claimant contributed to the development of his Potts disease by failing to continue with the prescribed course of INH therapy while he was released on bail from Rikers Island and in failing to advise DOCS physicians of that aspect of his medical history. Further, claimant's uncooperative and abusive conduct while in DOCS facilities contributed to the delay in diagnosis and treatment after the disease manifested itself. Finally, in our view the award of damages was reasonable (see, Diorio v Scala, 183 AD2d 1065, 1066-1067; Balmaceda v Perez, 182 AD2d 983, 984, lv denied 80 NY2d 755; Butler v Dihyem Food Corp., 180 AD2d 404; Georgiadis v State of New York, 106 AD2d 706, 708-709).

Mikoll, J. P., Yesawich Jr., Crew III and Harvey, JJ., concur. Ordered that the judgment is affirmed, without costs.