**John RANDOLPH; Johanne Randolph, Plaintiffs,**

v.

**BUDGET RENT–A–CAR; Saudi Arabian Airlines, Defendants.**

**No. CV 93–5087–AAH(JGx).**

United States District Court, C.D. California.

March 3, 1995.

---

Douglas G. McKarus, Law Offices of McKarus & Wabby, Encino, CA, for plaintiffs.

Stephen T. Swanson, Arter & Hadden, Jay T. Rubin, Brumer, Rubin & Weston, Los Angeles, CA, for defendants.

DECISION AFTER COURT TRIAL, FIXING DAMAGES FOR PERSONAL INJURIES, INCLUDING SEXUAL DYSFUNCTION AND LOSS OF CONSORTIUM

HAUK, Senior District Judge.

This matter came on regularly for Court Trial on January 17, 1995, and continued daily until January 20, 1995, before the Honorable A. Andrew Hauk, United States District Judge. Upon conclusion of this non-jury trial the case was taken under submission for decision.

The Court has heard the testimony, carefully examined all the evidence offered by the respective parties, considered all legal points and authorities, and now, being fully advised in the premises, makes and enters its Decision.

The Trial was a mandatory non-jury trial pursuant to 28 U.S.C. § 1441(d).[1] This

---

**1.** 28 U.S.C. § 1441(d) provides:

Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court *without jury.*

28 U.S.C. § 1441(d) (1994) (emphasis added).

**164**

Court has jurisdiction over this action pursuant to Article III § 2 of the United States Constitution [2] as implemented by 28 U.S.C. § 1330(a).[3]

■ Under the Foreign Sovereign Immunities Act "foreign states" are immune from the jurisdiction of the United States courts insofar as their non-commercial activities are concerned. 28 U.S.C. § 1602 *et seq.* Defendant Saudi Arabian Airlines ("Saudia") is a corporation formed under the laws of Saudia Arabia and is wholly owned and operated by the Government of Saudi Arabia. As such it is a "foreign state" as defined in 28 U.S.C. § 1603(a).[4] However, since the action was based upon a commercial activity carried on in the United States by the foreign state, Saudia is not immune from the Court's jurisdiction. 28 U.S.C. § 1605(a)(2).[5]

On January 26, 1993, Plaintiff John Randolph was driving his motorcycle westbound on the Pacific Coast Highway ("PCH") in the right-hand lane. Fahad Abdullah Maghrabi ("Maghrabi"), an employee of Saudia acting in the scope of his employment, was stopped on Corral Canyon waiting to turn left onto the PCH to go eastbound. According to the police report, Maghrabi, while driving a rental car obtained from Automated Transporta-

tion, Inc., dba Budget Rent–A–Car, LAX ("Budget"), did not see John Randolph coming, and proceeded into the highway, thereby proximately causing a collision between himself and Randolph. The police report added that Maghrabi was at fault due to failure to yield to traffic. Defendants have admitted that Fahad Abdullah Maghrabi was negligent and that Plaintiff, John Randolph, was not contributorily negligent. Additionally, Defendants have admitted that Maghrabi was the permissive user of the car rented from Budget. Based upon these facts the Court ruled prior to trial that as a matter of law Maghrabi was on a permissive mission for his employer Saudia. Further, the Court ruled as a matter of law that Saudia is liable for the injuries and damages proximately caused by Maghrabi's negligence.

As a proximate result of the accident John Randolph has suffered extensive orthopedic injuries. His left knee has a fractured tibial plateau and a tear of its anterior cruciate ligament; his pelvis was fractured resulting in the separation of his *pubic rami;* his pelvic region suffered a severe hematoma, resulting in a major *rectus* muscle injury; and the third and fourth metacarpals of his

---

**2.** Article 3, Section 2 provides:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States ... to Controversies ... between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. CONST. art. 3, § 2.

**3.** 28 U.S.C. § 1330(a) provides:

The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a) (1994).

**4.** 28 U.S.C. § 1603 provides:

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603 (1994).

**5.** 28 U.S.C. § 1605(a)(2) provides:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ...

in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States....

28 U.S.C. § 1605(a)(2) (1994).

left hand were also fractured. In an effort to alleviate some of the pain John Randolph has been suffering, he must undergo two future surgeries. The first is to remove metal fragments from his left knee; the second is to replace the left knee with an artificial knee implant. Further, it is quite possible that a second knee replacement operation will be needed if the first replacement does not work.

■ The expert medical evidence was stipulated by both sides to consist of their respective doctors' reports as direct testimony; and both sides waived their right to cross examination. Upon analysis of these reports, standing as they do uncontradicted by any cross examination, the court necessarily finds that the preponderance of the evidence weighs in favor of the plaintiff John Randolph, who has provided the Court with psychiatric and neurological reports that are more compelling than those of defendant's doctors. For instance, Dr. Daniel Asimus, plaintiff's psychiatrist/neurologist, has served as plaintiff's doctor for over ten years and makes his medical conclusions that plaintiff has secondary impotence and orgasmia directly related to the accident, based upon his personal examinations of the plaintiff both before and after the accident. By comparison, the defense's psychiatrist/neurologist, Dr. Irwin Ruben, based his evaluation of plaintiff solely upon one visit with the plaintiff and a review of other doctors' medical records.

As such, the Court finds that plaintiff has provided the Court with stronger testimony than that offered by the defendants, thereby enabling the Court to reach the reasoned conclusion, based upon the preponderance of the evidence, that John Randolph has suffered for the past two years, and will continue to suffer with diminishing impact but for at least one additional year, traumatic sexual dysfunction, as a direct and proximate result of the accident of January 26, 1993. This sexual dysfunction constitutes a major injury to him in that he is unable to obtain the normal erection or orgasm which he was able to achieve prior to the accident. Further, he and his wife have been unable to engage in normal marital relations for the nearly two years that he has suffered from the sexual dysfunction. Finally, it is clear that they may never be able to resume a mutually satisfying sexual relationship involving fully normal male erection and penetration.

Obviously, John Randolph's inability to perform and enjoy normal sexual intercourse, effects a palpable and tangible injury upon his wife, Johanne Randolph, which has prohibited her from enjoying conjugal fellowship and relationship with him for the past two years and will prohibit such fellowship for at least one additional year.

■ Now, having found the facts of the traumatic sexual dysfunction syndrome and injury suffered by John Randolph, and having concluded that as a matter of law Plaintiff John Randolph has indeed suffered from the injury of sexual dysfunction, including secondary impotence and orgasmia, it becomes the duty of this trial court to fix and determine the extent of these injuries in terms of dollar damages.

The Court has considered, in this connection, all of the evidence offered by Plaintiffs and Defendants, and the expert as well as non-expert testimony in making the findings of fact and the Court's conclusions as to the amount of damages set forth hereafter.

Moreover, the Court has conducted a determined and diligent search of the law, particularly decisions and judgments rendered in the courts both state and federal, where these courts have evaluated and fixed the monetary damages of traumatic sexual dysfunction and injury. As might be expected, this issue is shrouded in natural reticence and modesty which apparently have affected not only the medical literature—physiological as well as psychological—but also the judicial literature, particularly the decisional literature—trial as well as appellate.

Nevertheless, the Court should not be deterred or derailed by such difficulties, but must do the best it can here to arrive at reasonable and fair conclusions. In this connection, the Court has conducted an on-line computer search of judicial precedents and has come up with the following non-jury decisions and jury verdicts in cases where dam-

ages have been awarded, in whole or in part, for sexual dysfunction:

*Non–Jury Decisions*

*District of Idaho*

*Phillips v. United States,* 801 F.Supp. 337, 349 (D.Idaho 1992) (in awarding $3 million for "pain and suffering, mental anguish, and loss of enjoyment of life," the court in its non-jury decision listed sexual dysfunction as one of many ailments of the plaintiff who was left paraplegic from the accident.)

*Eastern District of Louisiana*

*Bourg v. Hebert Marine, Inc.,* 1988 WL 2690, at *11, 1988 U.S.Dist. LEXIS 128, at *12 (E.D.La. Jan. 13, 1988) (in awarding $15,000 for "urological problems" and $100,-000 for future pain and suffering, the court in its non-jury decision cited injuries as "neurological problems ... incontinence and sexual dysfunction.")

*Louisiana*

*James v. State,* 154 So.2d 497, 502 (La.Ct. App.1963) (in awarding $75,000 for pain and suffering, the court in its non-jury decision specified that damages covered "his life in a wheelchair, sexual impotence, anxieties, loss of social life ... and dependency on others for his every movement" after plaintiff was left paraplegic from the accident.)

*New York*

*Ogle v. State,* 191 A.D.2d 878, 594 N.Y.S.2d 824 (N.Y.App.Div.1993) (in awarding $320,-000 total damages, the court in its non-jury decision listed permanent paresthesia, spastic gait and sexual dysfunction among plaintiff's ailments when prison hospital failed to timely diagnose and treat plaintiff's spiral tuberculosis.)

*Jury Verdicts*

*California*

*Rosh v. Cave Imaging Systems, Inc.,* 26 Cal.App.4th 1225, 32 Cal.Rptr.2d 136 (1994) (in awarding $2,990,000 non-economic damages to plaintiff and $895,000 to his wife, the jury found that plaintiff's gun-related injury inflicted permanent partial paralysis below the waist, sexual dysfunction, bowel and bladder control problems and wife's loss of consortium.)

*Northern District of Illinois*

*Love v. Lerch,* 1993 WL 8200, 1993 U.S.Dist. LEXIS 185 (N.D.Ill. Jan. 13, 1993) (finding that plaintiff was injured in an auto accident causing him severe headaches and sexual dysfunction the jury awarded him $25,000 and $25,000 to his wife for loss of consortium.)

*Illinois*

*Mayol v. Summers, Watson & Kimpel,* 223 Ill.App.3d 794, 166 Ill.Dec. 154, 585 N.E.2d 1176 (1992) (in awarding $700,000 total damages in a legal malpractice action, the jury found plaintiff's back pain worsened as a result of visiting defendant chiropractors, causing loss of control over bowels and bladder and sexual dysfunction.)

*Pennsylvania*

*Walsh v. Kubiak,* 27 Phila. 239, 1994 Phila.Cty.Rptr. LEXIS 35 (Com.Pl.Ct.Phila.Cty. Jan. 6, 1994) (in awarding $2.6 million total damages in medical malpractice claim, the jury found unnecessary back surgery to plaintiff resulted in "a myriad of neurological damages," loss of control of bowels and bladder and sexual dysfunction.)

We note that four of the above cases were non-jury decisions, ranging from $75,000 to $3 million. Four of the cases were jury verdicts, ranging from $25,000 to nearly $4 million. They obviously cannot and do not mandate our decision, but they do give us a context in which to consider our conclusions.

As a direct consequence of this accident John Randolph has suffered and will in the future suffer chronic pain and suffering. Assigning a dollar value to these injuries, the Court finds that plaintiff John Randolph is entitled to special damages fixed as follows:

| | | |
|---|---|---|
| a) | Past medical expenses | $115,645.83 |
| b) | Past loss of earnings | 8,858.00 |
| c) | Future medical expenses | 33,750.00 |
| d) | Future loss of earnings | 6,000.00 |

Total Special Damages      $164,253.83

Further, Plaintiff John Randolph is entitled to general damages as follows:

a) Past sexual dysfunction includ- $200,000.00
ing secondary impotence and
orgasmia.

b) Future sexual dysfunction in-    50,000.00
cluding secondary impotence
and orgasmia

c) Past pain and suffering         300,000.00

d) Future pain and suffering asso- 150,000.00
ciated with the knee replace-
ment

e) Other future pain and suffering   50,000.00

Total General Damages              $750,000.00

■ Now we turn to the wife, Plaintiff Johanne Randolph, and the cause of action for loss of consortium which comes under the rubric of general damages. Plaintiff Johanne Randolph is entitled to general damages as follows:

a) Past loss of consortium         $30,000.00

b) Future loss of consortium         10,000.00

Total General Damages               $40,000.00

As a result of the foregoing the Court concludes that the liability of the defendants should be apportioned.

■ Saudia is liable for $914,253.83 to Plaintiff John Randolph. The maximum liability as against defendant Budget is $15,000.00 to Plaintiff John Randolph. Further, Budget's liability is automatically discharged upon the satisfaction by Defendant Saudi Arabian Airlines of at least $15,000.00 of the judgment entered in favor of Plaintiff John Randolph. *See Fenley v. Kristoffersen*, 94 Cal.App.3d 139, 156 Cal.Rptr. 187 (1979).

■ The liability of defendant Budget is controlled by California Vehicle Code §§ 17150, 17151(a). Loss of consortium is an independent injury to Johanne Randolph, wholly separate and distinct from that of the physical injuries suffered by her husband, John Randolph. Saudia is liable for $40,000.00 to Plaintiff Johanne Randolph. The maximum liability of defendant Budget is $15,000.00 to Plaintiff Johanne Randolph. Further, Budget's liability is automatically discharged upon the satisfaction by Defendant Saudi Arabian Airlines of at least $15,000.00 of the judgment entered in favor of Plaintiff Johanne Randolph. *Id.*

The foregoing Decision shall constitute the Findings of Fact and Conclusions of Law of this Court pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## JUDGMENT FIXING DAMAGES FOR PERSONAL INJURIES, INCLUDING SEXUAL DYSFUNCTION AND LOSS OF CONSORTIUM

The Court having made and entered its decision, including finding of facts and conclusions of law herein, based thereon, and good cause appearing;

It is hereby ORDERED, ADJUDGED and DECREED as follows:

1. That John Randolph shall have and recover from Defendant Saudi Arabian Airlines the sum of $914,253.83 and shall have and recover from Defendant Automated Transportation, Inc., dba Budget Rent a Car, Lax, the sum of $15,000.00.

2. That Plaintiff Johanne Randolph shall have and recover from Defendant Saudi Arabian Airlines the sum of $40,000.00 and shall have and recover from Defendant Automated Transportation, Inc, dba Budget Rent a Car, Lax, the sum of $15,000.00.

3. That these judgments against Budget shall be automatically discharged upon the satisfaction by Defendant Saudi Arabian Airlines in an amount exceeding $15,000.00 of the judgment entered for Plaintiff John Randolph and in an amount exceeding $15,000.00 of the judgment entered for Plaintiff Johanne Randolph.