■ HENRIETTA DeCESARE, Appellant, v SUSAN KAMINSKI et al., Defendants, and STEVEN BODINE, Respondent. [815 NYS2d 60]—

Order, Supreme Court, Bronx County (Patricia Anne Williams, J.), entered March 15, 2005, which, insofar as appealed from as limited by the briefs, granted defendant Dr. Steven

Bodine's motion for summary judgment dismissing the complaint as against him, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated as against said defendant.

On March 13, 2002, a cataract extraction was performed on plaintiff's right eye. Plaintiff, who was experiencing pain and decreased vision in the eye following the procedure, visited defendant Steven Bodine, M.D., a specialist in the field of ophthalmology, on April 23, 2002. Dr. Bodine's examination that day revealed, among other things, that retained lens fragments were present in the eye. These fragments caused inflammation of the cornea and increased pressure in the eye chamber. Dr. Bodine prescribed three different medications to reduce the inflammation and pain.

On May 7, 2002, Dr. Bodine received a telephone call from a physician who was providing follow-up care to plaintiff, Dr. Neil Katz. Dr. Katz informed Dr. Bodine that the intraocular pressure in plaintiff's right eye was 50 millimeters of mercury, a pressure that Dr. Bodine characterized as "very high," up from 15 millimeters on the date plaintiff first was treated by Dr. Bodine. Plaintiff visited Dr. Bodine later that day, and her intraocular pressure was ultimately reduced to 19 millimeters with the use of medications.

Plaintiff returned to Dr. Bodine's office on May 9. Dr. Bodine determined that the intraocular pressure was decreasing and discontinued one of the pressure-reducing eye medications that he had prescribed. Four days later, during another office visit, Dr. Bodine observed that plaintiff's intraocular pressure had increased to 18 millimeters. Dr. Bodine continued the regimen of medications and discussed with plaintiff the possibility of surgery to alleviate her condition.

Approximately three weeks later, on May 28, Dr. Bodine again examined plaintiff's right eye. Although he noted improved vision in the eye, Dr. Bodine determined that the intraocular pressure was a "very high" 35 millimeters. Dr. Bodine modified plaintiff's medications in an effort to lower the intraocular pressure. Two days later, plaintiff's intraocular pressure was 30 millimeters. The pressure then decreased to 10 millimeters on June 1, and 9 millimeters on June 4.

On June 7, Dr. Bodine learned that plaintiff had visited another physician, Dr. Robert Josephberg, for a separate opinion. Dr. Josephberg reported that plaintiff's intraocular pressure was 12 millimeters, and that he had decreased plaintiff's anti-inflammatory medications. Dr. Bodine saw plaintiff on June 13, and determined her intraocular pressure to be 18 millimeters.

Despite Dr. Bodine's opinion that plaintiff's condition was well controlled with medication, plaintiff insisted that surgery be performed. Accordingly, Dr. Bodine scheduled a procedure to remove the retained lens material. On June 18, one day before the procedure was to be performed, plaintiff notified Dr. Bodine that she wanted to cancel the procedure. Plaintiff began seeking treatment from other physicians and did not return to Dr. Bodine for care. Surgery was ultimately performed on plaintiff's right eye on October 3 by Dr. William Schiff.

Plaintiff subsequently commenced the instant action to recover damages for medical malpractice against, among others, Dr. Bodine. Plaintiff, claiming that she is blind in her right eye as a result of the medical care rendered by Dr. Bodine, alleged that Dr. Bodine was negligent in failing to surgically remove the retained lens fragments or refer her to a glaucoma specialist.

Dr. Bodine moved for summary judgment dismissing the complaint against him on two grounds: he did not depart from good and accepted medical practice and no act or omission attributable to him was a proximate cause of plaintiff's injuries. Supreme Court granted the motion, finding plaintiff's expert's affirmation insufficient to raise a triable issue of fact in response to Dr. Bodine's prima facie showing of entitlement to judgment as a matter of law. We reverse.

Plaintiff's expert's affirmation raised triable issues of fact regarding whether Dr. Bodine departed from good and accepted medical practice, and the issue of causation. Plaintiff's expert opined that Dr. Bodine should have performed surgery on the affected eye or referred plaintiff to a glaucoma specialist immediately after the April 23 office visit. This opinion rested upon the expert's conclusion that medications could not maintain the pressure of the eye within normal limits and that the continued presence of the retained lens fragments would exert additional pressure on the optic nerve, resulting in the gradual loss of vision. Plaintiff's expert outlined Dr. Bodine's continued failure, from plaintiff's first to last visits, to operate or refer plaintiff to a glaucoma specialist; in the expert's judgment, these were the only two medically acceptable choices available. This expert noted that the pressure in plaintiff's right eye chamber was frequently higher than normal—normal being 10 to 15 millimeters in this expert's opinion—during the period she was treated by Dr. Bodine. Plaintiff's expert concluded that Dr. Bodine departed from good and accepted medical practice in allowing the retained lens fragments to remain in plaintiff's eye. Critically, moreover, plaintiff's expert averred that this continuing departure caused extensive damage to the optic

nerve, damage that could have been avoided with earlier surgical intervention.

Supreme Court erred in concluding that plaintiff's expert's affirmation was insufficient because the expert did not explain why plaintiff waited until October to have the surgery. The record establishes merely that plaintiff canceled the procedure scheduled for June 19 and did not ultimately have the procedure until October 3. These facts do not undercut or even affect plaintiff's expert's conclusion that surgery or referral to a specialist were the only medically acceptable treatment options for plaintiff. Plaintiff's failure to have the surgery on June 19 and her failure to do so before October 3 raise, at most, an issue of fact regarding either plaintiff's comparative negligence (*see Elkins v Ferencz*, 263 AD2d 372, 373 [1999]; *see also Bellas v Kurpis*, 182 AD2d 542 [1992]) or failure to mitigate damages (*see Dombrowski v Moore*, 299 AD2d 949, 951 [2002]). Concur— Andrias, J.P., Williams, Sweeny and McGuire, JJ.