*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 14, 2016                    520409
_____

RODNEY VALLONE,
                    Appellant,

          v                              MEMORANDUM AND ORDER

SARATOGA HOSPITAL,
                    Respondent.
_____

Calendar Date:  April 22, 2016

Before:  Garry, J.P., Egan Jr., Lynch, Clark and Mulvey, JJ.

_____


     The Mills Law Firm, LLP, Clifton Park (Michelle M. Chester
of counsel), for appellant.

     Thuillez, Ford, Gold, Butler & Monroe, LLP, Albany (Molly
C. Casey of counsel), for respondent.

_____


Garry, J.P.

     Appeal from an order of the Supreme Court (Crowell, J.),
entered October 17, 2014 in Saratoga County, which denied
plaintiff's motion to set aside that part of a verdict in favor
of defendant.

     On June 3, 2007, plaintiff sought treatment in the
emergency room at defendant's facility, complaining of a history
of recurrent seizures.  After he was placed on an examination
table, his father brought him a cup of coffee.  Plaintiff
experienced another seizure and the hot coffee spilled into his
lap, burning him.  Later that day, plaintiff was admitted.  Three
days later, he was examined by a physician and diagnosed as
suffering from second degree burns, and a plastic surgery
consultation was requested.  Upon examining plaintiff the

following day, the plastic surgeon diagnosed his injuries as second and third degree burns. Plaintiff was discharged the next day, with instructions to seek further treatment from a physician within one week and from a plastic surgeon within two weeks. Upon learning that plaintiff had been discharged, the plastic surgeon who had examined him directed his staff to contact plaintiff to arrange an office visit so that plaintiff could be seen more promptly; this visit occurred several days following his discharge. The plastic surgeon recommended a referral to a burn center, and plaintiff subsequently underwent debridement and skin grafting surgery. As a result of his burn injuries, plaintiff allegedly suffered permanent scarring, lost function, and continuing pain.

Plaintiff commenced this action alleging negligence and medical malpractice. At trial, plaintiff contended that, in light of plaintiff's history of frequent seizures, defendant was negligent in permitting him to have coffee in the emergency room. Plaintiff further contended that defendant's employees exacerbated plaintiff's injuries and failed to comply with accepted standards of care by, among other things, failing to remove his clothes and cool his skin immediately after the coffee spill, and by discharging him prematurely. The jury returned a verdict finding that defendant was not negligent for allowing plaintiff to have coffee in the emergency room, but that defendant deviated from accepted standards of care in treating plaintiff's burns, and that this was a substantial factor in causing harm to plaintiff. The jury further found that defendant deviated from accepted standards of care in discharging plaintiff prematurely, but that this was not a substantial factor in causing harm to him. Finally, the jury found that plaintiff was comparatively negligent in causing the coffee spill, and that his percentage of fault was 90%, while defendant's was 10%. The jury rendered an award of damages in the sum of $25,000 to plaintiff for pain, suffering, and loss of enjoyment of life, to the date of the verdict, with no award for future damages. Plaintiff moved pursuant to CPLR 4404 (a) to set aside the verdict, and Supreme Court denied the motion. Plaintiff appeals from that order.

Plaintiff contends that Supreme Court erred in denying his

motion to set aside the verdict because the jury's findings that his premature discharge was not a substantial factor in causing him harm, and that he was comparatively negligent, were against the weight of the evidence and contrary to law.  As to the premature discharge, we find no error in Supreme Court's determination.  The jury's finding may be set aside as "inconsistent [with its determination that the discharge was improper] and against the weight of the evidence only [if] the issues are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause" (Adami v Wallace, 68 AD3d 1397, 1398 [2009] [internal quotation marks and citations omitted]; see Calderon v Irani, 296 AD2d 778, 778 [2002]).  Here, the issues of fault and causation are not so inseparably related.

The jury's determination that plaintiff was prematurely discharged was supported, among other things, by the testimony of an expert in emergency medicine, who stated that plaintiff was improperly discharged without an appropriate assessment and treatment plan, and that defendant should have transferred him to a burn center.  The expert opined that plaintiff's pain would have been handled more effectively at a burn center and that its duration and severity were prolonged by the premature discharge. However, there was ample other evidence from which the jury could reasonably have found that the severity of plaintiff's pain was caused by the initial injury rather than the premature discharge, and that his pain was not increased by the timing of his admission to the burn center a week after his discharge.  A plastic surgeon testified as an expert on defendant's behalf that an earlier transfer to a burn center would not have affected plaintiff's ultimate outcome.  Although there was testimony that plaintiff was in pain during the period that he was at home following his discharge, there was no evidence that his pain diminished following his arrival at the burn center, or that his treatment there was less painful than the previous treatments. Plaintiff testified that he continued to experience pain after he was admitted to the burn center, throughout his treatment there, and following his release.  Although plaintiff's treating plastic surgeon testified that the risk of infection is generally increased when a burn patient's admission to a burn center is delayed, there was no evidence that plaintiff suffered such an

infection.  Additionally, there was some evidence that the timing
of plaintiff's admission to the burn center after his plastic
surgeon's referral was affected, in part, by his own hesitation;
he was initially unsure that he wished to go to the burn center,
and did not immediately take the necessary actions to bring about
his admission following the referral.  Thus, granting defendant
the benefit of every favorable inference that can reasonably be
drawn from the trial evidence, as we must (see Pyptiuk v Kramer,
295 AD2d 768, 770 [2002]), we cannot say that "the evidence so
preponderated in favor of the plaintiff that the verdict could
not have been reached on any fair interpretation of the evidence"
(Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995] [internal
quotation marks, brackets and citation omitted]; see Ernst v
Khuri, 88 AD3d 1137, 1138 [2011]).

     We reach a different conclusion as to the issue of
plaintiff's comparative negligence.  The jury was instructed
that, if it determined that defendant was negligent in causing
plaintiff's injuries, then it must also determine whether any
negligence on plaintiff's part contributed to causing the coffee
spill.  Plaintiff contends that this instruction was erroneous,
as plaintiff's responsibility, if any, for causing the coffee
spill is irrelevant to defendant's liability for its inadequate
treatment of his burns after the spill occurred.  A comparative
negligence instruction is appropriate when there is evidence that
a plaintiff may share responsibility for harm that was inflicted
as a result of a defendant's medical malpractice (see Elkins v
Ferencz, 263 AD2d 372, 372-373 [1999]; see also DeCesare v
Kaminski, 29 AD3d 379, 382 [2006], lv dismissed 7 NY3d 844
[2006]; Ogle v State of New York, 191 AD2d 878, 881 [1993]).
However, no comparative negligence instruction should be given
when a plaintiff's alleged negligence preceded the alleged
medical malpractice and is not otherwise alleged to have
contributed to the harm resulting from the malpractice.  A
plaintiff's prior conduct "is not relevant, since the defendant's
liability extends only to that portion of [the plaintiff's]
injuries attributable to the defendant's malpractice" (DiMarco v
New York City Health & Hosps. Corp., 247 AD2d 574, 576 [1998], lv
denied 93 NY2d 807 [1999]; see Mendoza v Kaplowitz, 215 AD2d 735,
735-736 [1995]).  Here, although there was evidence from which
the jury could have found that plaintiff shared responsibility

for the initial coffee spill, defendant made no claim at trial
that plaintiff had any such shared responsibility for defendant's
subsequent deviations from the accepted standard of care in
treating plaintiff's injuries, nor was there any evidence adduced
at trial from which the jury could have found that plaintiff
shared such responsibility.[1]  Accordingly, plaintiff contends
that Supreme Court should have instructed the jury to consider
plaintiff's comparative negligence only if it found that
defendant was negligent in allowing him to have hot coffee in the
emergency room, and to exclude any consideration of comparative
negligence from its findings on defendant's subsequent
malpractice.

At trial, plaintiff made a general objection to the
comparative negligence instruction on the ground that there was
no evidentiary basis for the charge, but neither requested that
the jury be charged to exclude comparative negligence from its
consideration of the malpractice claims nor objected to the
proposed special verdict sheet.  Thus, plaintiff failed to
preserve this challenge to the instruction (see CPLR 4017,
4110-b; De Long v County of Erie, 60 NY2d 296, 306 [1983];
Curanovic v New York Cent. Mut. Fire Ins. Co., 22 AD3d 975, 975-
976 [2005]).  However, this Court may exercise its discretion to
order a new trial when an unpreserved error in a jury charge is
fundamental — that is, "so significant that the jury was
prevented from fairly considering the issues at trial" (Pyptiuk v
Kramer, 295 AD2d at 771 [internal quotation marks and citation
omitted]; accord Ciarelli v Lynch, 22 AD3d 987, 989 [2005];
Curanovic v New York Cent. Mut. Fire Ins. Co., 22 AD3d at 976-
977; see Martin v City of Cohoes, 37 NY2d 162, 165 [1975]).
Here, the jury was neither instructed to limit its consideration
of plaintiff's comparative negligence, nor that defendant's
liability extended only to that portion of plaintiff's injuries
attributable to its malpractice.  The jury was thus prevented
from fairly considering the central issue of damages.  The errors
were further compounded by the failure to instruct the jury "to

[1]  For this reason, we agree with plaintiff's additional
contention that the jury's comparative negligence determination
was against the weight of the evidence.

determine the total amount of damages sustained by plaintiff, undiminished by any percentage of fault" (Grant v Endy, 167 AD2d 807, 808 [1990]; see PJI 2:36.2). PJI 2:36 sets forth three essential steps to be followed by the jury in apportioning liability and calculating damages, and the third step — which instructs the jury to determine the total damage award without reference to any percentage of fault — is essential to avoid juror confusion and the risk of a double reduction of the plaintiff's recovery (see Scaduto v Suarez, 150 AD2d 545, 547-548 [1989]; Luppino v Busher, 119 AD2d 554, 556 [1986]; 1A NY PJI3d 2:36, Comment, Mode of Trial [Bifurcated or Full] [Note: online treatise]). Here, it is impossible to determine whether the jury intended the amount that it awarded to represent the total damage award or plaintiff's 10% share following the erroneous apportionment of fault. Accordingly, we find that the combined errors in the charge are fundamental, and that a new trial on the issue of plaintiff's damages is warranted in the interest of justice (see Krigsfeld v Feldman, 115 AD3d 712, 712-713 [2014]; Ciarelli v Lynch, 22 AD3d at 989-990; Decker v Rassaert, 131 AD2d 626, 627 [1987]; DiGrazia v Castronova, 48 AD2d 249, 251-252 [1975]).

Lynch and Mulvey, JJ., concur.


Egan Jr., J. (concurring).

This was a somewhat unusual case in the sense that plaintiff asserted causes of action sounding in both ordinary and professional negligence against defendant. We agree with the majority that because of errors in the jury charge and the construction of the verdict sheet, which caused the jury to consider the concept of plaintiff's comparative negligence in an overall way (rather than limited solely to the cause of action relating to the ordinary negligence claim), a new trial as to damages is required.

We write separately for two reasons. First, contrary to the majority's finding, we believe that plaintiff made a sufficiently specific objection to the comparative negligence instruction to preserve that issue for our review. Hence,

invoking this Court's interest of justice jurisdiction is, to our analysis, unnecessary. Second, and in an effort to provide some guidance to the trial court upon remittal as to the scope of the damages trial, we believe that some discussion as to the parameters of plaintiff's damages claim is warranted.

As evidenced by the verdict sheet, plaintiff put forth three theories of liability – namely, that defendant was negligent in permitting plaintiff to have hot coffee while he was in defendant's emergency department awaiting treatment for his seizure, that defendant committed medical malpractice in its treatment of plaintiff's resulting burns during the course of his hospitalization and that defendant committed medical malpractice by discharging plaintiff prematurely. Upon considering these respective theories of liability, the jury ultimately found in favor of plaintiff only with respect to defendant's treatment of plaintiff's injuries – concluding that defendant deviated from the accepted standards of care in treating plaintiff's burns and, further, that such deviation was a substantial factor in causing harm to plaintiff. Notably, the jury expressly found that defendant was not negligent in allowing plaintiff to have hot coffee while awaiting treatment in the emergency department and, further, that defendant's premature discharge of plaintiff was not a substantial factor in causing the harm suffered by him.

There can be no question that the jury's findings as to liability have significant implications for the jury that will be hearing proof as to plaintiff's damages upon remittal. The split verdict as to liability remains undisturbed by this appeal and will be the law of the case in the damages trial. In this regard, the jury at the damages trial must be instructed that defendant bears no liability for the actual coffee spill and, as such, plaintiff's damages, if any, cannot include compensation for the second and third degree burns – or any pain, suffering, disfigurement, impairment or loss of use resulting therefrom – suffered by plaintiff in the first instance. Rather, consistent with the prior findings as to liability, defendant is responsible only for whatever exacerbation of plaintiff's injuries that may have occurred due to defendant's deviation from accepted medical practices during the course of treating such injuries. In other words, the jury upon remittal must – in assessing plaintiff's

damages — proceed as if plaintiff had sustained the initial burn injuries elsewhere and limit the damages attributable to defendant's malpractice, if any, to only whatever additional pain, suffering, disfigurement, impairment and/or loss of use that plaintiff suffered as a result of defendant's treatment of him during the course of his hospital stay.  If the jury hearing proof as to plaintiff's damages is not so instructed, it may well — upon viewing the photographs of plaintiff's burns — seek to compensate him for the entirety of his injuries, including those occasioned by the initial coffee spill, even though — consistent with the prior findings as to liability — defendant is responsible only for whatever exacerbation of those injuries that may have occurred due to defendant's malpractice in its treatment of plaintiff.

Clark, J., concurs.

ORDERED that the order is modified, on the facts, without costs, by reversing so much thereof as denied plaintiff's motion to set aside the verdict as to damages; motion granted to that extent and matter remitted to the Supreme Court for a new trial on the issue of damages only; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court