Garry, J.R
Appeal from an order of the Supreme Court (Crowell, J.), entered October 17, 2014 in Saratoga County, which denied plaintiff’s motion to set aside that part of a verdict in favor of defendant.
On June 3, 2007, plaintiff sought treatment in the emergency room at defendant’s facility, complaining of a history of recurrent seizures. After he was placed on an examination table, his father brought him a cup of coffee. Plaintiff experienced another seizure and the hot coffee spilled into his lap, burning him. Later that day, plaintiff was admitted. Three days later, he was examined by a physician and diagnosed as suffering *887 from second degree burns, and a plastic surgery consultation was requested. Upon examining plaintiff the following day, the plastic surgeon diagnosed his injuries as second and third degree burns. Plaintiff was discharged the next day, with instructions to seek further treatment from a physician within one week and from a plastic surgeon within two weeks. Upon learning that plaintiff had been discharged, the plastic surgeon who had examined him directed his staff to contact plaintiff to arrange an office visit so that plaintiff could be seen more promptly; this visit occurred several days following his discharge. The plastic surgeon recommended a referral to a burn' center, and plaintiff subsequently underwent debridement and skin grafting surgery. As a result of his burn injuries, plaintiff allegedly suffered permanent scarring, lost function, and continuing pain.
Plaintiff commenced this action alleging negligence and medical malpractice. At trial, plaintiff contended that, in light of plaintiff’s history of frequent seizures, defendant was negligent in permitting him to have coffee in the emergency room. Plaintiff further contended that defendant’s employees exacerbated plaintiff’s injuries and failed to comply with accepted standards of care by, among other things, failing to remove his clothes and cool his skin immediately after the coffee spill, and by discharging him prematurely. The jury returned a verdict finding that defendant was not negligent for allowing plaintiff to have coffee in the emergency room, but that defendant deviated from accepted standards of care in treating plaintiff’s burns, and that this was a substantial factor in causing harm to plaintiff. The jury further found that defendant deviated from accepted standards of care in discharging plaintiff prematurely, but that this was not a substantial factor in causing harm to him. Finally, the jury found that plaintiff was comparatively negligent in causing the coffee spill, and that his percentage of fault was 90%, while defendant’s was 10%. The jury rendered an award of damages in the sum of $25,000 to plaintiff for pain, suffering, and loss of enjoyment of life, to the date of the verdict, with no award for future damages. Plaintiff moved pursuant to CPLR 4404 (a) to set aside the verdict, and Supreme Court denied the motion. Plaintiff appeals from that order.
Plaintiff contends that Supreme Court erred in denying his motion to set aside the verdict because the jury’s findings that his premature discharge was not a substantial factor in causing him harm, and that he was comparatively negligent, were against the weight of the evidence and contrary to law. As to *888 the premature discharge, we find no error in Supreme Court’s determination. The jury’s finding may be set aside as “inconsistent [with its determination that the discharge was improper] and against the weight of the evidence only [if] the issues are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause” (Adami v Wallace, 68 AD3d 1397, 1398 [2009] [internal quotation marks and citations omitted]; see Calderon v Irani, 296 AD2d 778, 778 [2002]). Here, the issues of fault and causation are not so inseparably related.
The jury’s determination that plaintiff was prematurely discharged was supported, among other things, by the testimony of an expert in emergency medicine, who stated that plaintiff was improperly discharged without an appropriate assessment and treatment plan, and that defendant should have transferred him to a burn center. The expert opined that plaintiff’s pain would have been handled more effectively at a burn center and that its duration and severity were prolonged by the premature discharge. However, there was ample other evidence from which the jury could reasonably have found that the severity of plaintiff’s pain was caused by the initial injury rather than the premature discharge, and that his pain was not increased by the timing of his admission to the burn center a week after his discharge. A plastic surgeon testified as an expert on defendant’s behalf that an earlier transfer to a burn center would not have affected plaintiff’s ultimate outcome. Although there was testimony that plaintiff was in pain during the period that he was at home following his discharge, there was no evidence that his pain diminished following his arrival at the burn center, or that his treatment there was less painful than the previous treatments. Plaintiff testified that he continued to experience pain after he was admitted to the burn center, throughout his treatment there, and following his release. Although plaintiff’s treating plastic surgeon testified that the risk of infection is generally increased when a burn patient’s admission to a burn center is delayed, there was no evidence that plaintiff suffered such an infection. Additionally, there was some evidence that the timing of plaintiff’s admission to the burn center after his plastic surgeon’s referral was affected, in part, by his own hesitation; he was initially unsure that he wished to go to the burn center, and did not immediately take the necessary actions to bring about his admission following the referral. Thus, granting defendant the benefit of every favorable inference that can reasonably be drawn from the trial evidence, as we must (see Pyptiuk v Kramer, 295 AD2d 768, 770 [2002]), we cannot say that “the *889 evidence so preponderated in favor of the plaintiff that the verdict could not have been reached on any fair interpretation of the evidence” (Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995] [internal quotation marks, brackets and citation omitted]; see Ernst v Khuri, 88 AD3d 1137, 1138 [2011]).
We reach a different conclusion as to the issue of plaintiff’s comparative negligence. The jury was instructed that, if it determined that defendant was negligent in causing plaintiffs injuries, then it must also determine whether any negligence on plaintiff’s part contributed to causing the coffee spill. Plaintiff contends that this instruction was erroneous, as plaintiffs responsibility, if any, for causing the coffee spill is ir-revelant to defendant’s liability for its inadequate treatment of his burns after the spill occurred. A comparative negligence instruction is appropriate when there is evidence that a plaintiff may share responsibility for harm that was inflicted as a result of a defendant’s medical malpractice (see Elkins v Ferencz, 263 AD2d 372, 372-373 [1999]; see also DeCesare v Kaminski, 29 AD3d 379, 382 [2006], lv dismissed 7 NY3d 844 [2006]; Ogle v State of New York, 191 AD2d 878, 881 [1993]). However, no comparative negligence instruction should be given when a plaintiff’s alleged negligence preceded the alleged medical malpractice and is not otherwise alleged to have contributed to the harm resulting from the malpractice. A plaintiff’s prior conduct “is not relevant since the defendant’s liability extends only to that portion of [the plaintiff’s] injuries attributable to the defendant’s malpractice” (DiMarco v New York City Health & Hosps. Corp., 247 AD2d 574, 576 [1998], lv denied 93 NY2d 807 [1999]; see Mendoza v Kaplowitz, 215 AD2d 735, 735-736 [1995]). Here, although there was evidence from which the jury could have found that plaintiff shared responsibility for the initial coffee spill, defendant made no claim at trial that plaintiff had any such shared responsibility for defendant’s subsequent deviations from the accepted standard of care in treating plaintiff’s injuries, nor was there any evidence adduced at trial from which the jury could have found that plaintiff shared such responsibility.* Accordingly, plaintiff contends that Supreme Court should have instructed the jury to consider plaintiff’s comparative negligence only if it found that defendant was negligent in allowing him to have hot coffee in the emergency room, and to exclude any consideration of comparative negligence from its findings on defendant’s subsequent malpractice.
*890 At trial, plaintiff made a general objection to the comparative negligence instruction on the ground that there was no evidentiary basis for the charge, but neither requested that the jury be charged to exclude comparative negligence from its consideration of the malpractice claims nor objected to the proposed special verdict sheet. Thus, plaintiff failed to preserve this challenge to the instruction (see CPLR 4017, 4110-b; De Long v County of Erie, 60 NY2d 296, 306 [1983]; Curanovic v New York Cent. Mut. Fire Ins. Co., 22 AD3d 975, 975-976 [2005]). However, this Court may exercise its discretion to order a new trial when an unpreserved error in a jury charge is fundamental — that is, “so significant that the jury was prevented from fairly considering the issues at trial” (Pyptiuk v Kramer, 295 AD2d at 771 [internal quotation marks and citation omitted]; accord Ciarelli v Lynch, 22 AD3d 987, 989 [2005]; Curanovic v New York Cent. Mut. Fire Ins. Co., 22 AD3d at 976-977; see Martin v City of Cohoes, 37 NY2d 162, 165 [1975]). Here, the jury was neither instructed to limit its consideration of plaintiffs comparative negligence, nor that defendant’s liability extended only to that portion of plaintiff’s injuries attributable to its malpractice. The jury was thus prevented from fairly considering the central issue of damages. The errors were further compounded by the failure to instruct the jury “to determine the total amount of damages sustained by plaintiff, undiminished by any percentage of fault” (Grant v Endy, 167 AD2d 807, 808 [1990]; see PJI 2:36.2). PJI 2:36 sets forth three essential steps to be followed by the jury in apportioning liability and calculating damages, and the third step — which instructs the jury to determine the total damage award without reference to any percentage of fault — is essential to avoid juror confusion and the risk of a double reduction of the plaintiff’s recovery (see Scaduto v Suarez, 150 AD2d 545, 547-548 [1989]; Luppino v Busher, 119 AD2d 554, 556 [1986]; 1A NY PJI3d 2:36, Comment, Mode of Trial [Bifurcated or Full]). Here, it is impossible to determine whether the jury intended the amount that it awarded to represent the total damage award or plaintiff’s 10% share following the erroneous apportionment of fault. Accordingly, we find that the combined errors in the charge are fundamental, and that a new trial on the issue of plaintiff’s damages is warranted in the interest of justice (see Krigsfeld v Feldman, 115 AD3d 712, 712-713 [2014]; Ciarelli v Lynch, 22 AD3d at 989-990; Decker v Rassaert, 131 AD2d 626, 627 [1987]; DiGrazia v Castronova, 48 AD2d 249, 251-252 [1975]).
Lynch and Mulvey, JJ., concur.

 For this reason, we agree with plaintiff’s additional contention that the jury’s comparative negligence determination was against the weight of the evidence.